COURT OF APPEALS OF VIRGINIA


Present:  Chief Judge Fitzpatrick, Judge Lemons and
          Senior Judge Duff
Argued at Alexandria, Virginia


JOAN M. RICHARDSON
                                          OPINION BY
v.    Record No. 0834-98-4          JUDGE DONALD W. LEMONS
                                          JULY 27, 1999
JOSEPH L. RICHARDSON


            FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
                      F. Bruce Bach, Judge

        Joseph A. Condo (Condo & Masterman, P.C., on
        brief), for appellant.

        J. Patrick McConnell (Elizabeth Laura Salans;
        Odin, Feldman & Pittleman, P.C., on brief),
        for appellee.


     Joan M. Richardson appeals an order of the Circuit Court of

Fairfax County granting Dr. Joseph L. Richardson a reduction in

child and spousal support payments.  On appeal, Mrs. Richardson

argues that the court erred in requiring her to prove that the

claimed reduction of Dr. Richardson's income was due to his own

acts or neglect, that the burden of proof should have rested on

Dr. Richardson, and that Dr. Richardson failed to meet the

burden.  Mrs. Richardson also argues that the trial court erred

in refusing to grant her request for attorney's fees.  We find

that the trial court did not err in granting Dr. Richardson a

reduction in child and spousal support payments; however, the

trial court utilized an improper factor in refusing to award

Mrs. Richardson attorney's fees and costs.  We reverse and remand for reconsideration of Mrs. Richardson's petition for attorney's fees and costs at trial.

## I.  BACKGROUND

Dr. Joseph L. Richardson ("Dr. Richardson") and Joan M. Richardson ("Mrs. Richardson") were divorced in 1996.  They have two children born of the marriage.  On May 14, 1996, the parties entered into a marital settlement agreement ("Agreement") which resolved all issues of support, property, and equitable distribution.  According to the Agreement, at the time of the divorce Dr. Richardson was earning an annual salary of $270,000 as a dentist with Reston Dental Group, P.C., and Mrs. Richardson was earning $30,000 annually working in geriatric care management.  The Agreement provided that Dr. Richardson would pay $4,200 per month in modifiable spousal support and $1,500 per month for each child in child support.  On October 2, 1997, Dr. Richardson filed a motion for reduction of support, alleging that his income had been "greatly reduced from its prior level" and that Mrs. Richardson's financial status had improved following entry of the final decree of divorce.  Dr. Richardson requested that his obligations to pay both child support and spousal support be reduced and that he be awarded attorney's fees and costs.

At the time of the hearing on February 19, 1998, Dr. Richardson was current with all spousal support and child

support payments.  Dr. Richardson testified that he had been a practicing dentist with Reston Dental Group, P.C., for ten years and was a shareholder in the practice.  Dr. Richardson stated that on August 28, 1997, he was unanimously voted out of Reston Dental Group at a shareholders' meeting.  Dr. Richardson testified that he "was not aware of anything [he] did to displease the group" and that he was not given a reason for his dismissal.  The termination agreement presented by Dr. Richardson at the hearing stated that his termination was "involuntary" and was based upon "personality conflicts and differences."

Dr. Richardson admitted that he was in a serious romantic relationship with Lisa Parker, who had been employed with Reston Dental Group as an assistant since 1993.  Dr. Richardson and Lisa Parker resided together.  Dr. Richardson testified that Reston Dental Group had a "spoken rule" that prohibited spouses from working in the practice but that there was "no mention of significant others [working in the practice] ever."  Dr. Richardson admitted that Dr. Forsbergh, another partner with Reston Dental Group, suggested that Dr. Richardson ask Parker to resign, stating, "since we were as the equivalent of spouses, even though we weren't married, that it fell under this heading of spouses not working in the office."

Dr. Richardson testified that after his dismissal, he opened a practice of his own, Reston Dental Care, retaining

approximately eighty percent of his patients from his former practice. Dr. Richardson stated that he did not initially receive any pay from his new practice but that he gradually began to draw earnings from the new corporation. At the time of the hearing, he was earning approximately $8,000 per month. Dr. Richardson testified that he did not consider moving out of the Reston area because he had practiced there for twenty years and he feared that if he relocated, he would lose a large number of patients. He also stated that he did not pursue a salaried position because such positions offered a salary of only $50,000 to $80,000 per year. Dr. Richardson testified that his ability to join another practice as a partner or shareholder was unlikely because he did not know of any practices in Reston that would take on another partner.

Dr. Richardson stated that he works six days a week for his new practice, renting space from another dentist. Parker works for Dr. Richardson, earning a salary of $25 per hour as an office manager. Dr. Richardson stated that because the size of the rented space is limited, he is "in the process of obtaining a piece of real estate to build a new office." Dr. Richardson's accountant, James Veltri, testified that purchasing or renting a new office and equipment to operate the dental practice would raise Dr. Richardson's expenses by about $3,000 per month.

Finding Dr. Richardson's income was $9,000 per month, and Mrs. Richardson's income was $4,650 per month, the trial court

reduced Mrs. Richardson's spousal support from $4,200 to $2,000 per month and reduced child support from $1,500 to $578 per month. The court declined to award attorneys' fees to either party.

Mrs. Richardson contends the trial court erred by: (1) placing on her the burden of proving that Dr. Richardson's termination was caused by his own act or neglect; (2) finding that Dr. Richardson's claimed reduction of income was not due to his own act or neglect; and (3) finding that she was not entitled to attorney's fees. The court ordered both the reductions in spousal support and child support retroactive to January 1, 1998.

## II. MODIFICATION OF SUPPORT

Because the court heard the evidence at trial, its decision "is entitled to great weight and will not be disturbed unless plainly wrong or without evidence to support it." Piatt v. Piatt, 27 Va. App. 426, 432, 499 S.E.2d 567, 570 (1998) (citations omitted); see Code § 8.01-680. In reviewing the findings of the trial court, "we construe the evidence in the light most favorable to husband, the prevailing party below, granting to him all reasonable inferences fairly deducible therefrom." Rogers v. Yourshaw, 18 Va. App. 816, 818, 448 S.E.2d 884, 885 (1994).

On appeal, Mrs. Richardson argues that the trial court erred by failing to require Dr. Richardson to establish that his

claimed reduction in income was not due to his own voluntary act or neglect. Mrs. Richardson argues that the court improperly placed this burden on her. She argues that Dr. Richardson "knowingly jeopardized his employment and livelihood and, in fact, lost his job, by refusing to obtain the resignation of his live-in companion as an employee of his dental practice, after being told by another principal of the practice that her employment violated company policy."

In a petition for modification of child support and spousal support, the burden is on the moving party to prove a material change in circumstances that warrants modification of support. See Street v. Street, 24 Va. App. 2, 9, 480 S.E.2d 112, 116 (1997). The material change "must bear upon the financial needs of the dependent spouse or the ability of the supporting spouse to pay." Id. at 9, 480 S.E.2d at 116 (citations omitted). An obligor/parent seeking a reduction in the amount of his or her child support obligation "must . . . make a full and clear disclosure about his ability to pay, and he must show his claimed inability to pay is not due to his own voluntary act or because of his neglect." Antonelli v. Antonelli, 242 Va. 152, 154, 409 S.E.2d 117, 119 (1991).

> Spouses deemed entitled to support have the right to be maintained in the manner to which they were accustomed during the marriage, but their needs must be balanced against the other spouse's financial ability to pay. . . . In addition, a court retains jurisdiction to modify an award of periodic

                    payments for support upon a showing that a
                    change of circumstances has occurred,
                    affecting the need for the payments or the
                    ability to make them.

Floyd v. Floyd, 1 Va. App. 42, 45, 333 S.E.2d 364, 366 (1985)

(citations omitted); see Code § 20-109.

     Dr. Richardson, as the moving party, was required to prove

that changed financial circumstances required a modification of

his duty to pay child and spousal support and that his claimed

inability to pay support at the previously established level was

not due to his own voluntary act or neglect.  At the hearing on

February 19, 1998, Dr. Richardson testified that he did not know

why he was terminated from Reston Dental Group.  He stated that

on August 26, 1997, he was given notice of a shareholders'

meeting convened to address his status as a shareholder.  Dr.

Richardson testified that the shareholders' meeting was held two

days later, on August 28, 1997, and during the meeting, the

shareholders voted unanimously to terminate him as a

shareholder.

     Dr. Richardson stated that he asked why he was being

terminated both prior to the meeting and several times during

the meeting, but his former partners refused to give him a

reason for his termination.  Dr. Richardson testified that he

was "not aware of anything I did to displease the group."  He

testified that he had some disagreements over his ten years in

the practice group with Dr. Kirkpatrick, the president of the

practice group, but that "there [were] not hard feelings about it. It was just a conflict in the practice." The severance agreement and general release agreement signed by three of the partners and Dr. Richardson stated that his termination was "involuntary . . . [and] based upon personality conflicts and differences."

Dr. Richardson admitted that after an administrative meeting, less than a month before his dismissal, he had been asked by one of his partners, Dr. Forsbergh, to talk to Parker about resigning her position. Dr. Richardson also admitted that following his conversation with Dr. Forsbergh, he and Parker consulted an attorney to determine whether there was any legal recourse to the attempts to terminate Parker. Dr. Richardson testified that although he was aware of the policy that prohibited spouses from working in Reston Dental Group, he did not believe the fact that he and Parker lived together violated the "spirit of that policy" and that he and Parker maintained a professional relationship in the office. At the hearing, the following colloquy took place between Dr. Richardson and Mrs. Richardson's counsel:

> Q: Well, what were the purposes that were given to you to suggest that you ask her to resign a month before you were asked to leave?
>
> A: What Dr. Forsbergh said was that since we were as the equivalent of spouses, even though we weren't married, that it

        fell under this heading of spouses not
        working in the office.

    Q:  So the fact is, Dr. Richardson, you do
        know at least partly why you were asked
        to leave that practice?

    A:  No, that had nothing to do with it.

    Q:  How do you know that?

    A:  Well, I don't know that.

Mrs. Richardson testified that she was aware of Reston
Dental Group's prohibition on married spouses working in the
practice.  She testified that during the marriage, Dr.
Richardson had told her of one occurrence where a partner's
spouse left her position with the practice because of the
policy.

Mrs. Richardson testified that her employment situation at
the time of the Agreement and at the hearing remained the same.
She stated that she worked in the business of arranging nursing
care and other support services for the elderly.  She testified
that her income had increased approximately five hundred dollars
per month from the time of the parties' Agreement until the date
of the hearing.

Following all testimony, the court granted Dr. Richardson's
petition for a reduction in spousal and child support and
stated,

        I believe from the evidence . . . that he
        did get fired there and he didn't expect it,
        and maybe it was involved with this woman
        somehow; but . . . I can't say that it was

> involved with her.  As far as I know it was
> an unexpected thing.

We must affirm the ruling of the trial court unless it is plainly wrong or without evidence to support it.  See <u>Jennings v. Jennings</u>, 26 Va. App. 530, 534, 495 S.E.2d 544, 546 (1998). Upon appellate review, we must review the facts in the light most favorable to the party prevailing below.  Mrs. Richardson maintains that the language used by the trial court illustrates that the burden of proof was improperly shifted to her.  We disagree.

In <u>Whitt v. Ervin B. Davis & Co., Inc.</u>, 20 Va. App. 432, 438, 457 S.E.2d 779, 782 (1995), we examined the issue of a party's burden of proof and stated,

> [A p]rima <u>facie</u> [case consists of] evidence which on its first appearance is sufficient to raise a presumption of fact or establish[ed] the fact in question unless rebutted.  It imports that the evidence produces for the time being a certain result, but that the result may be repelled. <u>Commonwealth v. Dalton</u>, 11 Va. App. 620, 623, 400 S.E.2d 801, 803 (1991) (habitual offender adjudication appeal citing standard for civil proceedings) (quoting <u>Babbit v. Miller</u>, 192 Va. 372, 379-80, 64 S.E.2d 718, 722 (1951)). Where the party having the burden of proof presents a <u>prima</u> <u>facie</u> case, the burden of going forward with the evidence shifts to the opposing party.  While the burden of proof remains unchanged, the party against whom a <u>prima</u> <u>facie</u> case exists can avoid the presumed result only by producing evidence to explain to the satisfaction of the trier of fact why the <u>prima</u> <u>facie</u> evidence is in error or is otherwise not subject to the appropriate standard of law applicable to such facts.  Such countervailing evidence is sufficient if it outweighs the <u>prima</u> <u>facie</u> case or leaves the ultimate question in equipoise.  See <u>Pullen v. Fagan</u>, 204 Va. 601,

604, 132 S.E.2d 718, 720 (1963) (standard applicable to civil proceedings); <u>Interstate Veneer Co. v. Edwards</u>, 191 Va. 107, 113-14, 60 S.E.2d 4, 7-8 (1950) (same).

After Dr. Richardson established a <u>prima facie</u> case that his termination was not due to his voluntary act or neglect, Mrs. Richardson introduced evidence in rebuttal. We do not construe the trial judge's explanation as improperly shifting the burden of proof; rather, we find that the trial judge accepted the evidence that constituted Dr. Richardson's <u>prima facie</u> case and determined that Mrs. Richardson's evidence did not rebut it. The burden of proof remained with Dr. Richardson.

### III. ATTORNEY'S FEES

On appeal, Mrs. Richardson requests that we remand the case to the trial court for an award of attorney's fees and costs incurred by her at trial. Mrs. Richardson also requests that the case be remanded for a calculation of attorney's fees and costs incurred on appeal.

In considering a trial court's decision to award attorney's fees, "[a]n award of attorney's fees is a matter submitted to the trial court's sound discretion and is reviewable on appeal only for an abuse of discretion." <u>Graves v. Graves</u>, 4 Va. App. 326, 333, 357 S.E.2d 554, 558 (1987). In determining whether attorney's fees incurred on appeal should be awarded:

> The rationale for the appellate court being the proper forum to determine the propriety of an award of attorney's fees for efforts expended on appeal is clear. The

> appellate court has the opportunity to view the record in its entirety and determine whether the appeal is frivolous or whether other reasons exist for requiring additional payment.

O'Loughlin v. O'Loughlin, 23 Va. App. 690, 695, 479 S.E.2d 98, 100 (1996).

In requesting an award of attorney's fees and costs at trial, Mrs. Richardson disclosed to the court that in negotiations prior to the hearing she suggested that child support payments be reduced to $1,000 per month and spousal support payments be reduced to $3,000 per month. Dr. Richardson refused to accept the settlement terms, insisting that the spousal support be totally eliminated before he would settle. The court refused to grant Mrs. Richardson's request for attorney's fees, stating, "If you'd have offered to - offered something like I came down with, I probably would give you some fees but. . . ."

The court indicated that if Mrs. Richardson had predicted more closely the amount of spousal and child support to be awarded by the court and proposed those amounts in her negotiations with Dr. Richardson, the court would have granted her request. We hold that the court abused its discretion in utilizing this factor as its stated basis upon which it refused to award attorney's fees to Mrs. Richardson. In determining whether an award of attorney's fees is appropriate, the focus should be on the parties' bona fide claims and not on the

parties' ability to predict in advance of trial the exact ruling of the court.

We remand for reconsideration of Mrs. Richardson's petition for an award of attorney's fees and costs at trial.  Mrs. Richardson's request for an award of attorney's fees on appeal is denied.

<u>Affirmed in part, reversed in part and remanded.</u>