COURT OF APPEALS OF VIRGINIA


Present:  Judges Annunziata, Agee and Senior Judge Coleman


KELLY WILSON
                                    MEMORANDUM OPINION*
v.    Record No. 0270-02-1              PER CURIAM
                                     SEPTEMBER 10, 2002
JAMES CITY COUNTY
 DIVISION OF SOCIAL SERVICES


          FROM THE CIRCUIT COURT OF THE CITY OF WILLIAMSBURG AND
                         COUNTY OF JAMES CITY
                Samuel Taylor Powell III, Judge

                (Edward Janes Bell, III, on brief), for
                appellant.

                (Frank M. Morton, III, County Attorney;
                Greg H. Dohrman, Assistant County Attorney;
                Alice K. Twiford, Guardian ad litem for
                Idalia Wilson; Frances S. Taylor, Guardian ad
                litem for Marquise Wilson, on brief), for
                appellee.


     Kelly Wilson (appellant) appeals the decision of the trial

court terminating his parental rights to two of his minor

children, Marquise and Idalia.  Upon reviewing the record and

briefs of the parties, we conclude that this appeal is without

merit.  Accordingly, we summarily affirm the decision of the trial

court.  See Rule 5A:27.

---

     * Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

BACKGROUND

"Upon appellate review, we must review the facts in the light most favorable to the party prevailing below." Richardson v. Richardson, 30 Va. App. 341, 349, 516 S.E.2d 726, 730 (1999).

On January 15, 2002, the trial court conducted a hearing on the matter. Cherrye Cole, who was formerly employed with the Gloucester County Division of Social Services (GC DSS), testified that she worked with the family in 1998 after one of appellant's children was placed in foster care. That child is not the subject of this appeal. At that time, GC DSS developed a foster care service plan that provided, among other things, that the entire family should attend family counseling and establish a stable home environment. The plan also provided for visitation and required that appellant attend parenting classes. Cole testified that appellant did not attend counseling or complete parenting class. Cole stated that the family had a continuing problem with the inability to maintain a stable home and sometimes lacked food and electricity.

In 1998, the family moved to James City County. On March 3, 1999, the James City County Division of Social Services (JCC DSS) filed a petition for an emergency removal order regarding Marquise and Idalia. The children were with appellant when he was arrested and taken to jail on March 2, 1999. The children's mother was also in jail at that time for a felony child neglect offense. In

-

addition, appellant has been convicted for the assault and battery of a child.

The children have been in foster care since April 1999. Melanie White of JCC DSS testified that the initial foster care service plan for the children had a goal of return home. Both parents were in jail at the time, and appellant was scheduled to be released from jail first. Therefore, the plan primarily addressed services for appellant upon his release from jail. Appellant was required to secure housing for the family, maintain steady employment, and participate in family counseling. He was also required to enroll in and complete a parenting education program, anger management and domestic violence programs, and a program on the needs of children with attention deficit hyperactivity. White testified that appellant did not complete the services outlined in the plan. White also stated that appellant had two founded complaints with the county for lack of supervision.

While they were in foster care, appellant visited the children sporadically and was often late for his visits. In September 2000, appellant returned to jail. White testified it was "emotionally traumatizing" for the children to visit him in jail. Appellant has telephoned Marquise about once every two weeks at his current foster home, but his overall compliance with the services has been "very minimal."

-

White testified that appellant's housing has been transient and unstable.  Appellant did not complete family counseling classes, parenting classes, anger management classes or children with special needs classes.  Appellant attended several classes for a nurturing family program while he was incarcerated.  He has not maintained steady employment.

White testified that when Marquise first came to foster care, he had numerous behavior problems.  He has been diagnosed with Bipolar disorder, Dysthymia, ADHD, and Oppositional Defiant Disorder.  He has taken several types of medications to manage his behavior.  Marquise was placed with his current foster mother, Clara Brown, in 1999, and his behavior has improved since that time.

Brown testified Marquise is "better now" and has been seeing therapists.  She stated he is a "totally different person" than he was when he first arrived in her home, and he has exhibited more "control" over his behavior.  Brown stated that Marquise is more difficult to control after he visits with appellant or his mother.

Idalia entered foster care when she was three years old.  She was "highly sexualized," was attending counseling sessions, and was taking medications for behavior management.  She has been diagnosed with Oppositional Defiant Disorder and appears to have suffered sexual abuse.  White stated that Idalia is intelligent, but she has high emotional needs.  She needs "continual modification interventions."  Idalia has been in therapy

-

concerning sexualized behavior issues.  A psychological evaluation of Idalia dated December 5, 2000 recommended that, due to allegations of appellant striking Idalia, appellant should have only supervised visitation with Idalia until a parenting capacity evaluation is performed.

Amy Burks, Idalia's foster parent for about five months, testified that she has had to retrieve Idalia from school when she has exhibited behavioral problems, which usually occurs just after she visits with her parents.  She stated that Idalia exhibits the behavior by jumping up and down and hitting her head against the wall.  Burks stated that Idalia "does great at home," and Burks participates in Idalia's counseling sessions.  Burks testified that Idalia's behavior has improved while she has lived with Burks and that she is interested in adopting Idalia.

White opined that it was in the best interests of the children to terminate appellant's parental rights.  The children have been in foster care for about three years.  White stated they needed stability, security, safety and nurturing.  The current foster homes are meeting those needs for the children, and the foster parents are interested in adopting the children.  White stated that appellant has not completed the services necessary to meet the children's needs.  The guardians ad litem for the children also recommended termination of appellant's parental rights.

Appellant, who has seven felony convictions, testified that he attended a parenting class. However, he has not taken classes concerning the special needs of the children because of his work schedule. Appellant was living with his parents at the time of the hearing and has not maintained his own residence since 1998. Appellant acknowledged that he is currently not in a position to take care of the children. He has been incarcerated about seventeen months of the approximately three years the children have been in foster care. Appellant has not talked with the children's counselors or teachers and only learns about Idalia's progress when he attends a court hearing. Appellant testified that JCC DSS has not given him information on the children.

The trial court found that, pursuant to Code § 16.1-283(C)(2), it is in the best interests of the children to terminate appellant's parental rights and that the requirements of the statute have been met. The trial court further found that appellant has not had consistent housing and has not completed the special programs needed to take care of the children.

## ANALYSIS

Under Code § 16.1-283(C)(2), the trial court can terminate a party's parental rights if the parent has "been unwilling or unable within a reasonable period of time not to exceed twelve months from the date the child was placed in foster care to remedy substantially the conditions which led to or required continuation of the child's foster care placement."

-

Marquise and Idalia have spent almost three years in foster care. For seventeen months of that time period, appellant was incarcerated.

> [W]hile long-term incarceration does not, per se, authorize termination of parental rights or negate the Department's obligation to provide services, it is a valid and proper circumstance which, when combined with other evidence concerning the parent/child relationship, can support a court's finding by clear and convincing evidence that the best interests of the child will be served by termination.

Ferguson v. Stafford County Dep't of Soc. Servs., 14 Va. App. 333, 340, 417 S.E.2d 1, 5 (1992).

Furthermore, during the three years the children have been in foster care, appellant has failed to participate in most of the recommended programs that would teach him how to meet the special needs of the children and to rectify the conditions that perpetuate the children in foster care. In addition, appellant admitted that he is not currently in a position to take care of the children. Moreover, the children are improving while in foster care.

"In matters of a child's welfare, trial courts are vested with broad discretion in making the decisions necessary to guard and to foster a child's best interests." Farley v. Farley, 9 Va. App. 326, 328, 387 S.E.2d 794, 795 (1990). On appeal, we presume that the trial court "thoroughly weighed all the evidence, considered the statutory requirements, and made its determination

-

based on the child's best interests."  Id. at 329, 387 S.E.2d at 796.  Furthermore, "[w]here, as here, the trial court heard the evidence ore tenus, its finding is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it."  Martin v. Pittsylvania County Dep't of Soc. Servs., 3 Va. App. 15, 20, 348 S.E.2d 13, 16 (1986).

The evidence in this case supports the trial court's findings.  It is apparent that appellant is unable to care for the children and is unable to remedy within a reasonable time the conditions which led to his children's placement in foster care.  Thus, we cannot say that the trial court's finding by clear and convincing evidence that the conditions of Code § 16.1-283(C)(2) have been established was plainly wrong or without evidence to support it.  Accordingly, we summarily affirm the decision of the trial court.  See Rule 5A:27.

Affirmed.

-