## CIRCUIT COURT OF MADISON COUNTY

Martha F. A. Davis

v.

William J. Davis, Jr.

April 4, 2011

Case No. CH04-0003344-00

By Judge Daniel R. Bouton

I have now had an opportunity to study and evaluate the written arguments that have been presented based on the hearing that was conducted on December 10th. I have also reviewed all of the trial exhibits. I set forth below the rulings of the court on all disputed issues.

### *The Petition To Modify Spousal Support*

The principles of law that apply to this issue have been well established. To begin with, the court's authority to act can be found in § 20-109(A) of the Code of Virginia. In relevant part, the statute provides that the court "may increase, decrease, or terminate the amount…of any spousal support . . . as the circumstances make proper." In order to grant the relief requested by Mr. Davis under the statute, the court must find that a material change in circumstances has occurred since the spousal support was ordered. Second, the changed circumstances must justify a modification or termination of the original award. Third, the burden is on the moving party to prove the change in circumstances and to prove that the change warrants a revision to the original decree. *Blackburn v. Blackburn*, 30 Va. App. 95 (1999); *Richardson v. Richardson*, 30 Va. App. 341 (1999).

The court will begin by addressing the first question required by the analysis: whether Mr. Davis has established a material change in circumstances. Here, the court will first clarify whether the financial condition of both parties must be evaluated or whether only that of Mr. Davis will be considered. On this point, a material change in circumstances

can relate to the financial needs of the dependent spouse or the ability of the supporting spouse to pay the obligation. *Richardson, supra.* In this case, however, Mr. Purcell correctly notes that the petition filed by Mr. Davis only seeks relief based on a change in his financial circumstances. Specifically, he claims that he has "undergone material and substantial changes in his financial circumstances which have adversely affected his ability to pay the spousal support accrued." In his petition, he makes no claim about the financial circumstances of Ms. Atkinson, and he makes no reference to her needs.

The argument that Ms. Atkinson's circumstances should not be considered is premised on the right of a litigant to be put on notice of all claims and theories of relief that are asserted by any opposing party. In Virginia, all disputed issues in a case are defined by and limited to those that are identified in the pleadings. Cases are not litigated and decided by principles of law and facts that are not contained in the complaint, petition, or pleadings before the court. A judgment or ruling must not be based on a right that has not been claimed or pleaded. *Ted Lansing Supply Co. v. Royal Aluminum Construction Corp.*, 221 Va. 1139 (1981).

In the present case, the petition of Mr. Davis is clear and unequivocal. He informed Ms. Atkinson that he was requesting a modification based on a material change in his financial circumstances. He nowhere pleads that her financial condition should have any impact on his spousal support obligation. He never requested leave to amend his petition to include any assertion regarding the financial needs of Ms. Atkinson. Therefore, in determining whether there has been a material change in circumstances, the court finds that the pleadings in the case limit the claim to the financial circumstances of Mr. Davis.

Mr. Davis seems to concede this point in his written arguments. (Pp. 3-7 of Defendant's Reply to Plaintiff's Closing Memorandum.) Furthermore, both sides agree that, if Mr. Davis is successful in proving a material change in circumstances, then the finances of both parties may be considered in deciding whether a change or modification of the support award is warranted.

The court will now turn its attention to the evidence regarding the financial circumstances of Mr. Davis to determine whether or not he has established a material change in circumstances. First, as noted by Mr. Purcell, the evidence offered by him regarding his annual income levels is both inconsistent and puzzling. Whether he is attempting to confuse or mislead the court or whether he was simply careless or negligent in assembling the information does not matter. The critical point is that the evidence on his alleged inability to pay any support because of a significant loss of income is not reliable. (Wife's Brief on Defendant's Motion to Reduce Spousal Support, pp. 9-13; Plaintiff's Response Brief to Defendant's Closing Memorandum, pp. 17-20.)

What has been proven is that Mr. Davis continues to operate a farm that generates thousands of dollars of income every month. This has not really changed since the original hearing, and Mr. Davis's own evidence confirms this finding. For example, Mr. Anthony Dores was among the witnesses called to provide testimony regarding the business and farming activities of Mr. Davis. For more than twenty-five years, Mr. Dores has worked for and with Mr. Davis on a variety of farm and construction projects. He is thoroughly familiar with the work of the farm and how it has functioned. At the hearing, Mr. Dores said that the farm of Mr. Davis continues to operate just as it did in 2001. His testimony did not prove that any changes to the work and business routine of the farm have occurred since the first hearing on spousal support.

Second, no material change has occurred regarding the availability of money to Mr. Davis. As noted previously, he continues to have several reliable sources of income. His farm generates a steady cash flow. He also receives rent from a number of different individuals on a monthly basis. Moreover, he now collects a fairly generous Social Security check each month. He has no significant debts or financial problems. He also has the money to support a reasonably comfortable lifestyle. This includes spending money for a number of hobbies that give him pleasure. Mr. Davis has also advertised his availability on the internet for dating and social functions; these are endeavors that require money.

Third, no major change has taken place with regard to the assets that are available to Mr. Davis. Specifically, he has a great deal of equity in a valuable farm that has been used as collateral to borrow money. The evidence at trial established that he had no difficulty using this asset to generate cash on prior occasions. Furthermore, since he was ordered to pay spousal support, there has been no material change in his net worth. On this point, it should be noted that Mr. Davis signed a loan application on May 29, 2009, in which he stated that his farm is worth $1,766,400.00. He also listed his net worth as $1,822,202.93. This was just a few weeks after he filed his motion to reduce spousal support. More than one year later, on August 26, 2010, he signed a personal financial statement that reflected a net worth of $1,766,939.57 (Wife's Exhibit Book, Exhibit O and Exhibit P.) Furthermore, there was no evidence at the December 10th hearing to suggest that his assets have diminished or declined in value. Furthermore, Mr. Davis offered no explanation as to why he did not attempt to draw on this self-reported net worth to raise money to pay his support.

Finally, Mr. Davis also cites his health as a factor in arguing that he has established a material change in circumstances. The court finds that this is the one argument presented by Mr. Davis that has some merit. Over time, advancing age and some specific medical problems have had some impact on his ability to engage in construction work and to perform a number

of chores required by his farm. These limitations have resulted in a very modest reduction in his earning capacity.

It is critical to stress, however, that Mr. Davis's health problems did not occur suddenly, and they had no impact on his ability to pay support when the order went into effect. Furthermore, while this constitutes a material change, it is not one that supports the significant and sweeping relief asked for by Mr. Davis. As advertised by him in his internet dating profile, Mr. Davis's health has not been permanently or severely compromised. Rather, the material change warrants only an examination of whether a minor reduction in the support award is justified. Most important, nothing about the court's ruling on this issue in any way mitigates the civil contempt that Mr. Davis has exhibited under the final decree. This issue is discussed in detail in the next section of this opinion.

Having found that there has been a material change in circumstances pertaining to the earning capacity of Mr. Davis, the court will now turn its attention to the evidence that was presented on the question of whether the alleged change warrants a modification of the existing order. Here, the evidence includes all of the information that was developed at trial regarding the financial circumstances of both parties. The court has also considered all of the evidence with respect to the health of Mr. Davis. Under Virginia law, "every material change may not warrant a modification of support. . . ." *Blackburn, supra,* at 103. Furthermore, judges must make support awards based upon "current circumstances and what the circumstances will be within the immediate or reasonably foreseeable future." *Srinivasan v. Srinivasan,* 10 Va. App. 728, 735 (1990).

Based on a full consideration of all of the evidence in the record, it is the court's judgment that a very modest reduction to Mr. Davis's spousal support obligation would be appropriate. Accordingly, he will now be required to pay $1,350.00 per month. Moreover, since this reduction in earning capacity developed gradually, the change will take effect beginning on December 10, 2010, the date of the hearing on his petition.

### The Show Cause Regarding the Support Arrearages

Mr. Davis correctly notes that he cannot be found in civil contempt unless the evidence establishes that his inability to pay is a result of contumacious behavior, namely stubborn and obstinate disobedience. *Street v. Street,* 24 Va. App. 2, 22 (1997). However, the court finds that this is precisely how Mr. Davis behaved in failing to abide by the court's order.

The procedural history of the case illustrates quite well the extent of Mr. Davis's civil contempt. To begin with, the court announced its rulings on support in a letter opinion of April 21, 2008. The final decree was entered on May 4, 2009. It set forth the monthly support obligation, $1,600.00, and noted an arrearage of $32,400.00. The Court of Appeals affirmed the

court's ruling on January 26, 2010. For not one month during this extensive period of time did Mr. Davis ever pay the full amount that was ordered by the court. Rather, he violated the court's order every month.

In his defense, Mr. Davis offers two arguments. First, he maintains that he continued "in good faith to meet the $400.00 monthly obligation. . . ." Second, he asserts that his overall financial condition was so burdensome and his health was so poor that he did not have sufficient funds to pay in full his monthly spousal support.

The court will first address Mr. Davis's position regarding the $400.00 payments. The argument that he was demonstrating good faith by paying this amount each month is completely misplaced. Once the court ruled on the issue of spousal support, Mr. Davis was no longer obligated to pay $400.00 each month. This amount was set forth in a pendente lite order; however, this order expired with the entry of the final decree. Therefore, choosing to ignore the final order and make regular payments based on an order that was no longer in effect was wrong. Deciding to pay not a penny more than $400.00 each month in the face of the court's clear order can arguably be characterized as arrogance and bad faith. Moreover, in light of the evidence regarding the financial condition of Mr. Davis, it defies common sense to assert that for every month during this long period of time he was not once able to pay the full amount. Furthermore, to suggest that he was never able to pay more than $400.00 during at least some of the months covered by the final order borders on preposterous. Thus, the argument that Mr. Davis was doing his best and that he was showing good faith is summarily rejected by the court.

The court also rejects the argument of Mr. Davis that his financial condition and his alleged health problems prevented him from complying with the court's order. On this point, it is not necessary to repeat all of the testimony that was elicited at trial on this issue. Moreover, all of the exhibits that contain information on this subject need not be identified. Rather, a few key points about the evidence will illustrate why the position of Mr. Davis has no merit.

To begin with, since the original support order was entered, Mr. Davis has continued to generate large sums of gross income every month, primarily from his farming operation. Moreover, he now receives a social security payment each month, and he also has rental income from several sources. Mr. Davis has no significant debts, and he has not experienced any serious financial problems since he was ordered to pay spousal support. He has the money for a comfortable lifestyle that includes some enjoyable hobbies. He owns a valuable farm and has a substantial net worth. In short, from the time that the order was first entered, Mr. Davis has had available to him both cash and assets that would have allowed him to pay his support. Finally, as noted in the discussion on the petition for modification, nothing

about Mr. Davis's health justified his refusal to comply with the court's order. The modest reduction in support that will commence from the date of the December 10th hearing is a limited form of relief that applies only to Mr. Davis's present circumstances. Nothing about his health justified his refusal to pay support for this extensive period of time.

In light of the above analysis, the court finds Mr. Davis in civil contempt of the support order. The court rejects as not worthy of belief the testimony that he offered as to why he did not comply with the court's spousal support order. Mr. Davis decided to keep paying what was ordered at his pendente lite hearing until he saw what happened with his appeal. Once the Court of Appeals affirmed the circuit court's ruling, he then chose to continue to ignore the final decree until he learned what the court's ruling would be on his modification request. Mr. Davis did these things with full knowledge of what his obligation was under the court's order. This is contempt and will not be tolerated by the court.

Sanctions available for his contempt include but are not limited to incarceration. At this time, the court exercises its discretion to take under advisement the issue of punishment. Since this is a case of civil contempt, the law requires that the court set the conditions that must be met by Mr. Davis to purge himself of the contempt. In this regard, the conditions are as follows:

1. He will pay in full the total amount of all spousal support arrearages by September 1, 2011;

2. He will pay in full all attorneys' fees incurred by Mr. Purcell on the issue of the show cause by May 31, 2011;

3. He will immediately begin paying in full on a timely basis what has been ordered by the court;

4. He will appear in the Madison County Circuit Court for a hearing on a date subsequent to September 1st. The purpose of the hearing will be to review his compliance with the court's orders and to determine whether he has purged himself of the civil contempt. Should the court find that he has not complied, the question of an appropriate punishment will be addressed.