COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Judges Humphreys, Causey and Senior Judge Clements
Argued at Richmond, Virginia


JANE MARIE MYERS
                                                MEMORANDUM OPINION* BY
v.        Record No. 0748-21-2                  JUDGE JEAN HARRISON CLEMENTS
                                                       AUGUST 23, 2022
BRIAN DAVID MYERS


FROM THE CIRCUIT COURT OF CAROLINE COUNTY
Sarah L. Deneke, Judge

Steven Shareff for appellant.

Brandy M. Poss (Barnes & Diehl, P.C., on brief), for appellee.


The circuit court awarded Brian David Myers (husband) a divorce from Jane Marie Myers

(wife). The final decree resolved all issues of the grounds for divorce, equitable distribution,

spousal support, and attorney fees. On appeal, wife challenges the circuit court's rulings regarding

equitable distribution, spousal support, and attorney fees. For the reasons that follow, we affirm the

judgment of the circuit court.

BACKGROUND

"When reviewing a trial court's decision on appeal, we view the evidence in the light most

favorable to the prevailing party, granting it the benefit of any reasonable inferences." *Starr v.*

*Starr*, 70 Va. App. 486, 488 (2019) (quoting *Congdon v. Congdon*, 40 Va. App. 255, 258 (2003)).

Husband and wife married on July 12, 1991. The parties had one child born in 2001, who is

now emancipated. The parties separated on October 1, 2004. Wife filed a complaint for divorce in

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

Loudoun County, and the Loudoun County Circuit Court held a *pendente lite* hearing on November 5, 2004. The Loudoun County Circuit Court ordered temporary spousal support in the amount of $4,000 per month.[1]

On March 26, 2005, the parties sent a letter to the mortgage company and stated that the parties agreed that the marital residence would "be deeded to [wife] alone" and husband relinquished all rights to the marital residence. Wife filed an "Emergency Motion to Affirm, Ratify and Incorporate by Reference Marital Agreement Between Parties" and asked that the letter be deemed a "Marital Agreement." The Loudoun County Circuit Court found that the letter was a marital agreement and incorporated the agreement into an order. The Loudoun County Circuit Court further ordered that the proceeds from the sale of the marital residence, amounting to $268,097.98, be released to wife.[2] Wife endorsed the order as "Seen & agreed," while husband endorsed the order as "Seen & objected to" without further explanation.

The Loudoun County Circuit Court struck the matter from the docket for inactivity in 2009. Nevertheless, husband continued to provide wife $4,000 in spousal support on a monthly basis, until January 2016, when their child turned eighteen years old. Husband then paid wife $1,500 a month for several months and increased the payments to $2,500 a month until November 2019.

In 2019, wife filed a petition for spousal support in the Caroline County Juvenile and Domestic Relations District Court ("JDR court").[3] After a contested hearing, the JDR court dismissed with prejudice wife's petition; wife appealed the JDR court's order. Based on the JDR court's ruling, husband ceased making support payments to wife.

---

[1] Husband was ordered to pay $993.43 per month in *pendente lite* child support.

[2] The Loudoun County Circuit Court reserved the right to consider the distribution of the marital property at the final equitable distribution hearing.

[3] Husband lived in Caroline County, Virginia; wife lived in North Carolina.

In November 2019, husband filed the instant complaint for divorce in the Caroline County Circuit Court ("circuit court"), and in 2020, filed an amended complaint for divorce. Husband asked that wife "be denied spousal support, alimony and maintenance both *pendente lite* and permanently" and that "the property rights and equitable distribution of the property of the parties hereto be settled and determined." Husband also filed a motion to consolidate the divorce with wife's appeal of the JDR court's dismissal of her petition for spousal support. The circuit court granted husband's motion to consolidate.

Wife filed an answer and counterclaim, in which she asked the circuit court to award her spousal support, equitably distribute all marital and hybrid property, and enforce the 2005 "Marital Agreement."[4] Wife alleged that at the time of the separation, the net equity in the former marital residence was $190,000 and that she was entitled to any increase in value to the property following the date of separation. Wife also asserted that the parties agreed that husband's waiver of his interest in the former marital residence would offset wife's interest in husband's retirement accounts and that "the remaining amounts in [husband's] retirement, 401K, pension, stock, annuity and profit sharing accounts would be equitably distributed between the parties as determined by the [c]ourt." In his answer, husband denied, in pertinent part, that the parties entered into a "Marital Agreement."

In January 2021, husband filed a motion for alternate valuation dates for the former marital residence and his retirement accounts. Husband asked that the former marital residence be valued at $268,098, the amount wife received after she sold the residence in August 2005.[5] Husband acknowledged that he had accrued certain retirement benefits during the parties' marriage and after their separation. He asked the circuit court to value the retirement accounts as they existed at the

---

[4] Wife subsequently filed a motion to incorporate the "Marital Agreement."

[5] Husband did not receive any proceeds from the sale of the former marital residence. Wife had used the proceeds from the August 2005 sale to purchase another home and later rolled that into two additional properties.

time of the parties' separation. At the time of the parties' separation, husband owned four retirement accounts valued at approximately $210,000. Specifically, those four accounts consisted of a Morgan Stanley IRA valued at $35,586, a Sprint retirement account valued at $105,177, a Fidelity brokerage account valued at $58,307, and a Charles Schwab account valued at $11,918.65. After the parties' separation, husband continued to contribute to these accounts and rolled them over to other accounts, including a Morgan Stanley IRA, Morgan Stanley Investment account, Morgan Stanley Alt. Investment account, ServiceNow 401(K), Fidelity Tenable Stock Options, Tenable 401(K), Savos Investment, Multiple Strategy, LPL Financial/Cortale, Verizon Savings Plan 401(K) account number xxx76, and Verizon Savings Plan 401(K) account number xxx83. Husband asked that the circuit court assign an alternate valuation date of October 2004 to these retirement accounts, resulting in a $0 value, because they did not exist at the time of the parties' separation.[6]

Wife argued against the motion for an alternate valuation date. Wife claimed that the parties had discussed, but they "never had a formal agreement or anything," that she would receive the former marital residence and husband would receive his retirement. Wife sold the former marital residence for $268,098 in August 2005. Wife testified that the parties had agreed that in 2004, the net equity in the residence was valued at $190,000, which she claimed they would divide evenly at the time of the divorce. Wife acknowledged that she kept all the sale proceeds. Wife claimed that the retirement accounts were commingled but asked the court to award her twenty-five percent of husband's retirement as of the date of the hearing because she believed that "would be a fair and equitable remedy." Husband testified that the "settlement agreement" referred to in the 2005 letter to the mortgage company referred to the parties' agreement that he would relinquish his

_____

[6] The accounts include a Sprint pension plan and three Morgan Stanley accounts at issue in this appeal, that had an estimated value of $1.2 million.

- 4 -

interest in the former marital residence in exchange for keeping his retirement accounts. Husband emphasized that the parties had "relied heavily" on that agreement during their seventeen-year separation.

During the marriage, husband worked full-time. Wife worked full-time at the beginning of the marriage but ceased once their child was born. Wife stayed home with their child and was responsible for the majority of the household chores. Wife cared for her ill mother for seven months until she passed away in 1995. Following her mother's death, wife was diagnosed with depression and anxiety, for which she continues to take medication.

Husband's taxable income when the parties separated was $282,405. Husband's taxable income was $463,005 in 2019, and his adjusted gross income was $250,174 in 2018 and $378,204 in 2017. Wife testified that at the time of trial, she had approximately $50,000 in credit card debt. As of December 2019, wife's income was $0, and her monthly expenses totaled $4,761. Wife received $200 in food stamps and intended to seek work on a part-time basis. Wife's monthly expenses increased to $6,185 in March 2020, due to credit card fees and attorney fees. Wife had a Roth IRA account, opened after the parties' separation, that was valued at $3,499.55 as of October 2020. Wife testified that she suffered from depression, anxiety, fibromyalgia, arthritis, and chronic vein insufficiency that limited her ability to stand.

Wife alleged that she was unable to work due to her medical conditions. Anthony Bird, a vocational expert, interviewed wife and completed a report that husband submitted to the circuit court. Bird opined that if wife were to upgrade her computer skills, she would be "highly employable in general office jobs, [as a] receptionist, administrative assistant, general office clerk, [or] customer service representative." Bird estimated that wife could earn approximately $26,000 to $33,000 a year.

The circuit court issued its initial letter opinion on February 9, 2021. The circuit court granted husband's motion for an alternate valuation date of October 1, 2004, for his retirement accounts and determined that the most accurate value of the former marital residence was the proceeds from the sale in 2005. The circuit court found that the parties had divided the marital assets, including the former marital residence and retirement accounts, by agreement, which was not reduced to writing. The circuit court found that "[b]oth parties invested, reinvested and used as separate property the funds/accounts/property from their agreed settlement" and that "[b]y every action, both parties evidenced a division of all marital property from the date of separation."

The circuit court found that each party was "entitled to 50% of the marital assets of this 13-year marriage based on the [Code § 20-107.3] factors and the parties recognized this in their prior division of personal property, assets and debt." The circuit court also found that the parties previously had agreed to a distribution of the assets. Accordingly, the circuit court awarded wife $268,000, represented by the equity in the former marital residence, and awarded husband $208,832.52, represented by the value of his retirement accounts as of October 1, 2004. The circuit court recognized that this division "actually favor[ed] wife over a 50% split."

After considering the Code § 20-107.1 factors, the circuit court granted wife monthly spousal support in the amount of $1,500, for five years. The circuit court found that wife had been "out of the work force for a significant period of time," but was "voluntarily unemployed" during the parties' separation. Finally, the circuit court determined that each party was responsible for his or her own attorney fees. The circuit court subsequently entered the final order of divorce *a vinculo matrimonii* and incorporated the findings of the letter opinion.

Wife timely filed a motion for reconsideration, challenging the circuit court's findings regarding the alternate valuation date, marital agreement, equitable distribution, and spousal support.[7] Husband responded to wife's motion, countering her arguments.

Upon reconsideration, the circuit court entered a second letter opinion dated May 20, 2021. The circuit court again granted husband's motion for alternate valuation date. The circuit court determined the marital estate was valued at $428,586.65. The circuit court awarded wife fifty-five percent of all marital assets, or $265,422, as of the alternate valuation date. The circuit court awarded husband forty-five percent of the marital estate, valued at $217,163. The circuit court held that "[b]ecause the assets retained by each party [were] within a fraction of the award[,] . . . no further funds are owing either party from equitable distribution."

Regarding spousal support, the circuit court reconsidered its previous ruling and awarded wife support in the amount of $4,000 per month for twenty-four months, followed by $1,500 for the subsequent sixty months. The circuit court explained that the "limited duration [was] based on wife's receipt of support for an extended period of time prior to filing and her ability to obtain employment." The circuit court "specifically reject[ed] the request for lifetime support based on the wife's ability to work." The circuit court did not adjust its previous determination that neither party was entitled to attorney fees. The circuit court incorporated the letter opinions into a final order of divorce, entered on June 25, 2021. Wife timely noted her appeal.

---

[7] The circuit court suspended the final order of divorce pending resolution of wife's motion for reconsideration.

ANALYSIS

Alternate Valuation Date and Equitable Distribution

Wife argues that the circuit court "abused its discretion in valuing the marital assets at the date of separation, in lieu of the trial date 17 years later."[8] The Court will not overturn an equitable distribution award unless we find "an abuse of discretion, misapplication or wrongful application of the equitable distribution statute, or lack of evidence to support the award." *Dixon v. Dixon*, 71 Va. App. 709, 717-18 (2020) (quoting *Anthony v. Skolnick-Lozano*, 63 Va. App. 76, 83 (2014)). The circuit court "'in evaluating marital property should select a valuation "that will provide the Court with the most current and accurate information available which avoids inequitable results."'" *Wright v. Wright*, 61 Va. App. 432, 463 (2013) (quoting *Gaynor v. Hird*, 11 Va. App. 588, 593 (1991)). "The court shall determine the value of any such property as of the date of the evidentiary hearing on the evaluation issue." Code § 20-107.3(A). Nonetheless, "[u]pon motion of either party made no less than 21 days before the evidentiary hearing the court may, for good cause shown, in order to attain the ends of justice, order that a different valuation date be used." *Id.* "A good cause determination invests a trial court with discretion." *Wright*, 61 Va. App. at 466 (quoting *AME Fin. Corp. v. Kiritsis*, 281 Va. 384, 392 (2011)). "On appeal, we review the court's determination of a valuation date for abuse of discretion." *Id.* at 463 (quoting *Thomas v. Thomas*, 40 Va. App. 639, 647 (2003)).

---

[8] Husband states that wife's first and third assignments of error are procedurally barred because wife failed to include a transcript from the January 22, 2021 hearing in the record, during which husband states the parties argued husband's motion for an alternate valuation date before the court. This missing transcript, however, is not indispensable to the resolution of the issues raised in appellant's assignments of error. *See Bay v. Commonwealth*, 60 Va. App. 520, 528-29 (2012) ("If . . . the transcript [or statement of facts] is indispensable to the determination of the case, then the requirements for making the transcript [or statement of facts] a part of the record on appeal must be strictly adhered to.").

As the husband's retirement accounts were classified as marital property, the circuit court was required to value the ownership interest. Code § 20-107.3(A). We agree that the circuit court did not abuse its discretion in finding good cause to grant husband's motion for an alternate valuation date of October 2004, when the parties separated. The circuit court explained in detail its reasons for assigning valuation dates. As the circuit court noted, the parties had been separated for sixteen years before the hearing, during which time they both "invested, reinvested and used as separate property the funds/accounts/property from their agreed settlement." Notably, "wife sold the marital home, retained all proceeds and bought more than one house over the course of time." Additionally, "husband continued to contribute to and consolidate[] retirement funds he retained." The circuit court found that the parties' own actions "evidence[d] a division of all marital property from the date of separation," and, thus, the "[t]he most accurate evidence of the marital share of the retirement accounts [was] at time of separation, and the most accurate evidence of the marital home value [was] the net proceeds of sale."

Wife argues that the alternate valuation date was "employed as a vehicle to deprive [her] of the appreciation of the marital share of the retirement accounts." This case presents an unusual situation, where the parties have been separated for more than sixteen years. Since that time, husband maintained possession of the retirement accounts, and wife maintained the equity of the former marital residence. Both parties had rolled their assets into other investments. There is no evidence in the record of the amount the marital share in the retirement accounts had appreciated or depreciated in value.[9] Likewise, there is no evidence of the value wife gained or lost from the

_____

[9] Wife argued that husband failed to trace his separate contributions from the retirement assets, and husband argued that wife failed to trace the passive appreciation on the marital share of the retirement accounts. Considering our ruling that the circuit court did not abuse its discretion in granting the motion for an alternate valuation date, we need not address the parties' tracing arguments. *See Chaney v. Karabaic-Chaney*, 71 Va. App. 431, 438 (2020) ("Following the traditional doctrine of judicial restraint, [appellate courts] 'decide cases "on the best and narrowest grounds available."'" (quoting *Levick v. MacDougall*, 294 Va. 283, 302 (2017))).

proceeds of the marital residence. Accordingly, because the circuit court's reasons were cogent and proper, we conclude that the court did not abuse its discretion granting husband's motion to set an alternate valuation date.

Marital Agreement

Wife next argues that the circuit court erred in failing to incorporate the marital agreement regarding the disposition of the marital residence into the divorce decree. Wife also asserts that the circuit court incorrectly determined that the parties had entered into an agreement regarding husband's retirement accounts because, although testimony of both parties confirmed that they had discussed this possibility, there was no evidence of an agreement that was reduced to writing and signed by both parties. Citing *Gaffney v. Gaffney*, 45 Va. App. 655 (2005), wife contends that we must apply a *de novo* standard of review because this assignment of error presents a question of law involving the application of Code § 20-155.

Contrary to wife's argument, however, "[t]he language of Code § 20-109.1 gives the trial court discretion in determining whether a [marital agreement] should be incorporated by reference into a final decree of divorce. Absent an abuse of discretion, the trial court's decision must be upheld on appeal." *Doering v. Doering*, 54 Va. App. 162, 169 (2009) (quoting *Forrest v. Forrest*, 3 Va. App. 236, 239 (1986)); *see also Mayers v. Mayers*, 15 Va. App. 587, 589 (1993).

In a letter dated March 26, 2005, the parties signed a letter to the mortgage company, advising it that as "a part of our Settlement Agreement in the Divorce proceedings," the parties had agreed that the former marital residence would be "deeded to [wife] alone" and husband would "relinquish claim to the property." The Loudoun County Circuit Court found that the parties' letter to the mortgage company was a marital agreement and incorporated it into an order. The Loudoun County Circuit Court also awarded the sales proceeds from the former marital residence to wife and reserved the right to consider "adjustments in the disposition of other marital

property" at the equitable distribution hearing. Neither party pursued the matter, and ultimately, the Loudoun County Circuit Court purged the case from its docket under Code § 8.01-335(A) due to inactivity.

After the parties sought a divorce in Caroline County, wife raised the issue of the marital agreement and the distribution of husband's retirement accounts. Husband countered that the parties had agreed that wife would receive the sales proceeds from the former marital residence and he would receive his retirement accounts. The circuit court correctly stated that it was "not bound to the agreement." Nevertheless, the circuit court awarded wife the value of the marital residence. Moreover, although the circuit court acknowledged that its decision aligned with what the parties had discussed at the time of separation, specifically that wife would retain the value of the marital residence and husband would retain the value of the retirement accounts, the circuit court did not incorporate a formal agreement into the decree. Rather, the circuit court simply noted that its conclusion matched the actions the parties had already taken at the time of separation. Accordingly, wife's argument fails, as the circuit court did not abuse its discretion in declining to incorporate the agreement.

### Husband's Retirement Accounts

In her third assignment of error, wife alleges the circuit court erred in determining that husband's current retirement accounts, estimated to be valued at $1.2 million, were not marital property because "the marital accounts were rolled over into various accounts during the parties' separation and were currently sitting in Husband's Morgan Stanley accounts." This argument is inapposite because, for the reasons stated above, the circuit court correctly set an alternate valuation date for the retirement accounts that constituted marital property.

Spousal Support

The circuit court awarded wife $4,000 per month in spousal support for twenty-four months, beginning March 15, 2021, and then $1,500 per month for sixty months. Wife argues that "[t]he trial court erred in limiting [her] spousal support to a seven-year term and in not awarding her more than $1500 in spousal support for the final five years of this term." Wife asserts that "the trial court did not weigh and consider in its opinion the tremendous disparity in assets and resources of each party."

"'The trial court has "broad discretion in setting spousal support and its determination will not be disturbed except for a clear abuse of discretion."'" *Wyatt v. Wyatt*, 70 Va. App. 716, 719 (2019) (quoting *Giraldi v. Giraldi*, 64 Va. App. 676, 681 (2015)). "In determining the appropriate amount of spousal support, the trial court must consider the needs of the requesting party and the other spouse's ability to pay." *Id*. (quoting *Alphin v. Alphin*, 15 Va. App. 395, 401 (1992)).

"In determining spousal support, the . . . court must consider all factors contained in Code § 20-107.1; failure to do so constitutes reversible error." *Chaney v. Karabaic-Chaney*, 71 Va. App. 431, 435 (2020) (quoting *Rowe v. Rowe*, 24 Va. App. 123, 139 (1997)). Relevant here, those factors include the "obligations, needs and financial resources of the parties," "the standard of living established during the marriage," "the duration of the marriage," the "contributions, monetary and nonmonetary, of each party to the well-being of the family," "earning capacity, including the skills, education and training of the parties," and the "provisions made with regard to the marital property." Code § 20-107.1(E). Although "a trial judge must consider all the factors" enumerated in Code § 20-107.1 when determining an appropriate amount of spousal support award, "the judge is not 'required to quantify or elaborate exactly what weight or consideration it has given to each of the statutory factors.'" *Pilati v. Pilati*, 59 Va. App. 176, 183 (2011) (quoting *Duva v. Duva*, 55 Va. App. 286, 300 (2009)). Instead, "[w]hat weight, if any, to assign to [each] factor in the overall

- 12 -

decision lies within the trial court's sound discretion." *Id.* (quoting *Robbins v. Robbins*, 48 Va. App. 466, 481 (2006)). Moreover, "Code § 20-107.1(F) required the circuit court to provide written findings both specifying factors under subsection (E) relevant to the award and identifying 'the basis for the nature, amount, and duration of the award.'" *Cleary v. Cleary*, 63 Va. App. 364, 372 (2014).

The record demonstrates that in setting the amount of spousal support for wife, the circuit court appropriately and explicitly considered the factors set forth in Code § 20-107.1(E) and properly identified "the basis for the nature, amount, and duration of award," as required under Code § 20-107.1(F). The circuit court noted that the parties were married for thirteen years and had been separated for "over 15 years." Contrary to wife's argument that the circuit court erred in not considering the disparity of assets and resources between the parties, the circuit court explicitly noted "wife has debt she acquired since separation and no income and claims expenses of approximately $6,000 per month. Husband reports income of approximately $30,000 per month and no significant debt." The circuit court noted that husband worked during the marriage and continued to work following the separation. The circuit court stated that although wife was employed at the beginning of the marriage, she ceased working to care for the couple's child, and had "not worked outside the home nor sought employment in two decades." The circuit court acknowledged that wife's current job opportunities were limited. The circuit court accepted the testimony of the vocational expert that with rehabilitative job training and computer skills, wife could make an estimated annual salary of $33,000. The circuit court accepted wife's testimony that she "suffer[ed] from depression and medical conditions that limit[ed] her job opportunities," but concluded that she was capable of obtaining employment. Although wife argues on appeal that her medical ailments prevent her from working, she offered no evidence that these

prohibited her from employment or qualified as a disability, nor was there evidence that she ever applied for disability.

Wife alleges that the circuit court erred in failing to consider her "devotion as the primary caretaker of the parties' son." The circuit court, however, acknowledged that wife stayed home with the child, as was the agreement of the parties, and that the parties "contributed equally to the marriage." The circuit court also noted that the child was now an adult and received support from husband.

In fashioning the award of spousal support, the circuit court was clearly attuned to wife's situation, specifically providing a larger award for two years, to give wife time to obtain training and employment, before reducing it for the remaining five years. As the circuit court noted, "[s]even years of support after a seventeen-year separation for a thirteen-year marriage is a duration approaching twice the length of the marriage." The circuit court explained that the "limited duration [was] based on wife's receipt of support for an extended period of time prior to filing and her ability to obtain employment." The circuit court "specifically reject[ed] the request for lifetime support based on the wife's ability to work." We conclude that the circuit court considered the relevant statutory factors, and thus did not abuse its discretion in its award of spousal support.[10]

### Attorney Fees

Wife next argues that the circuit court abused its discretion in failing to award her attorney fees. "[A]n award of attorney's fees is a matter submitted to the trial court's sound discretion and is reviewable on appeal only for an abuse of discretion." *Allen v. Allen*, 66 Va. App. 586, 601 (2016)

---

[10] Wife argues that the circuit court incorrectly classified the parties' standard of living during the marriage as "middle class," as opposed to "upper middle class." Wife failed to offer any explanation as to what, if any, change in the classification would have on the circuit court's ruling.

(alteration in original) (quoting *Richardson v. Richardson*, 30 Va. App. 341, 351 (1999)); *see also Conley v. Bonasera*, 72 Va. App. 337, 350 (2020). "[T]he key to a proper award of counsel fees [is] reasonableness under all of the circumstances revealed by the record." *Conley*, 72 Va. App. at 350 (alterations in original) (quoting *McGinnis v. McGinnis*, 1 Va. App. 272, 277 (1985)).

Wife contends that she "prevailed on her spousal support appeal from JDR court, where she was denied any support, and she has presented valid arguments on equitable distribution as outlined at trial and in this appeal." Wife emphasizes the economic disparity between the parties and that she had "incurred attorney's fees compelling discovery and issuing multiple subpoenas for Husband's financial and employment information due to his noncompliance with discovery."

As noted above, the circuit court considered all of the circumstances in its equitable distribution award and spousal support award. It declined to award attorney fees to either party. Based on the entire record, we find that the circuit court did not abuse its discretion in ordering each party to pay for his/her attorney fees and costs.

<u>Husband's request for attorney fees on appeal</u>

Finally, husband requests attorney fees incurred in these appeals. "The decision of whether to award attorney's fees and costs incurred on appeal is discretionary." *Koons v. Crane*, 72 Va. App. 720, 742 (2021) (quoting *Friedman v. Smith*, 68 Va. App. 529, 545 (2018)). In making such a determination, the Court considers all the equities of the case. Rule 5A:30(b)(3). After considering the record before us and all the equities of the case, we deny husband's request for appellate attorney fees.

## CONCLUSION

For the foregoing reasons, the circuit court's ruling is affirmed.

*Affirmed*.