COURT OF APPEALS OF VIRGINIA

Present: Judges Petty, Malveaux and Athey
Argued by teleconference

UNPUBLISHED

CAVIN JOHAN JONES

                                         MEMORANDUM OPINION[*] BY
v.     Record No. 2009-19-2          JUDGE MARY BENNETT MALVEAUX
                                             JULY 7, 2020

HEIDI MARLANE JONES

FROM THE CIRCUIT COURT OF ORANGE COUNTY
Dale B. Durrer, Judge

Elizabeth G. Thorne (Davies, Barrell, Will, Lewellyn & Edwards,
PLC, on briefs), for appellant.

Robert L. Harris, Jr. (Barnes & Diehl, P.C., on brief), for appellee.

Cavin J. Jones ("husband") appeals the circuit court's order denying his motion for reduction of spousal support. He argues that the circuit court erred in: (1) ruling that his reaching the mandatory retirement age was not a material change in circumstances meriting modification of spousal support; (2) implicitly imputing income to him because there was no evidence that he is capable of earning more than his actual post-retirement income; and (3) using the lack of evidence on the issue of his retirement at the 2015 equitable distribution hearing as a factor to support continuing spousal support at the existing level. For the following reasons, we affirm.

I. BACKGROUND

Husband and Heidi M. Jones ("wife") married on January 24, 1992 and separated on December 31, 2013. The circuit court entered a final decree of divorce for the parties on October

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

13, 2015.[1]  The court granted the divorce based upon a one-year separation, but also found that wife had proved by clear and convincing evidence that cruelty and adultery by husband were factors relating to the dissolution of the marriage.

In its equitable distribution award, the circuit court awarded wife, among other assets, 60% of husband's thrift savings plan ("TSP") and 60% of husband's gross retirement annuity under the Federal Employee Retirement System ("retirement annuity").  The final decree is silent as to whether the circuit court gave any consideration to either party's future retirement.[2]

The circuit court also awarded wife $3,500 a month in spousal support for an indefinite duration.  In making its spousal support award, the circuit court considered the factors set forth in Code § 20-107.1(E) and made the following findings.  The court noted that husband was fifty-three years old and in good health and that wife was fifty-five years old and in remission from breast cancer.  Further, there were "no physical conditions that would prevent either party from seeking employment outside of the home."  The court also found that the standard of living established during the twenty-three-year marriage had been "significant," noting that wife had not worked outside of the home by agreement of the parties.  Husband had made the majority of the monetary contributions to the household, and wife had made the majority of the non-monetary contributions and provided care and maintenance for the marital property.

The court specifically found that there was a large disparity in the earnings and earning potentials of the parties, with husband having significantly higher earnings and earning potential.

---

[1] The parties had two children during their marriage, both of whom had reached the age of majority at the time of entry of the final decree of divorce.

[2] The divorce decree predated the 2018 amendment to Code § 20-107.1(F) which now requires written findings as to whether either party's retirement was contemplated by the court. See Code § 20-107.1(F) ("Any order granting or reserving any request for spousal support shall state whether the retirement of either party was contemplated by the court and specifically considered by the court in making its award, and, if so, the order shall state the facts the court contemplated and specifically considered as to the retirement of the party.").

Based upon agreement of the parties, the court found that husband's earning capacity was "significantly high." The court noted that husband had earned $144,525.12 in 2014 and $185,619.94 in 2013, while wife had earned $12,626.25 in 2013. Husband was currently employed by the Department of Homeland Security ("DHS") and was eligible for retirement, while wife was employed by Germanna Community College. The court determined that wife was not "underemployed" because she had been out of the workforce for twenty years due to the agreement of the parties and also because the parties had moved multiple times during the course of the marriage to further husband's career.

In making its spousal support determination, the court also considered the evidence of cruelty and adultery on husband's part, husband's physical assault of wife and the parties' children, and husband's inappropriate physical contact with the parties' daughter.

Three years after the entry of the divorce decree, on June 13, 2018, husband filed a motion to reduce spousal support, asserting that his retirement constituted a material change in circumstances warranting modification of the spousal support award.[3] On March 11, 2019, the circuit court held an evidentiary hearing on husband's motion.[4]

At the hearing, husband introduced an exhibit showing that his income from DHS was $158,163 in 2015, the year of the divorce. The exhibit also showed that husband had earned $159,764 from DHS in 2016. Husband testified that his security clearance, which had been required for his position at DHS, had been due to expire in June 2017, and that it would not have been renewed because of language in the divorce decree regarding his fault. Husband left his employment with DHS in June 2017. He also testified that he would have been required to retire

---

[3] Prior to husband's motion to reduce spousal support, on March 29, 2018, wife filed a motion for rule to show cause, alleging that husband had failed to pay spousal support and was in arrears in the amount of $84,000.

[4] Instead of a transcript, the record includes a written statement of facts of this hearing.

from DHS in any event no later than June 2019, upon reaching the mandatory retirement age of fifty-seven. Husband testified that he was unable to return to his former job at DHS and, anticipating the non-renewal of his security clearance, he had begun searching for alternative employment in late 2016 or early 2017. Husband was hired by Envoy Air as a pilot in June 2017. His income from Envoy Air was $55,692.04 in 2018. In addition, according to the court's letter opinion following the hearing, husband "also testified concerning his efforts to secure employment consistent with his salary when he retired," but this specific testimony is not included in the statement of facts.

Husband further testified at the hearing that he currently received a monthly retirement annuity of $2,156.03. In addition, $3,501.60 per month of his total retirement annuity was automatically deducted to be paid to wife as her 60% award of the retirement annuity pursuant to the divorce decree. Husband stated that once wife contacted the Office of Personnel Management ("OPM") to set up payment of her share of the annuity, she would receive these monthly payments retroactive to March 1, 2018.

Husband stated that the value of his TSP has been reduced to $213,765.04 as of December 31, 2018. He agreed to the entry of a garnishment order deducting an additional $84,500 from his TSP to pay a spousal support arrearage owed to wife. Husband introduced a monthly income and expense sheet dated March 5, 2019, that showed a total monthly net income of $5,267.64 and total monthly expenses of $4,831.

Wife, who was fifty-eight years old at the time, testified that husband had consistently been in arrears on his spousal support payments. The only support payments received by wife had come through garnishment of husband's TSP funds. Wife also testified that she was not currently receiving her share of husband's retirement annuity.

Wife introduced W-2 statements and paystubs showing that she had earned $22,603.38 in 2015, $25,178.62 in 2016, $44,975.74 in 2017, and $37,754.75 as of mid-November 2018. Wife testified that she remained in need of financial support and stated that her average monthly expenses were approximately $3,885.60 to $3,981.60. She stated that she had $16,000 to $18,000 in savings.

The circuit court took husband's motion to reduce spousal support under advisement. On April 16, 2019, the court issued a letter opinion in which it denied the motion.[5]

Husband filed a motion to reconsider the circuit court's ruling on June 7, 2019. The circuit court entered an order taking husband's motion to reconsider under advisement and, on September 24, 2019, held a hearing on the motion to reconsider. At the hearing, husband testified that he had turned fifty-seven in June of 2019,[6] and that that was the age of mandatory retirement for law enforcement personnel at DHS. Husband also testified that what he received from his monthly retirement annuity had changed since March 2019 and was now reduced to $1,609.14 a month. He stated that in May 2019, he had started to pay wife $800 a month in spousal support using funds from his TSP. Husband testified that nothing had changed since the last hearing that would enable him to afford the level of spousal support previously ordered in the divorce decree.

Wife also testified at the hearing. She stated that she lived in a rented apartment in Bozeman, Montana and she had moved there to take a job that provided health insurance after

---

[5] In the letter opinion's statement of facts, the court notes that wife had been granted a "divorce based on fault[-]based grounds." This is incorrect, as wife had been granted a divorce based upon a one-year separation, with the divorce decree also stating that the court found that wife had proved by clear and convincing evidence that husband's cruelty and adultery were factors relating to the dissolution of the marriage.

[6] We note that husband actually testified that he turned fifty-seven in June 2018; however, his date of birth, June 14, 1962, reflects that his fifty-seventh birthday occurred in June of 2019.

the first evidentiary hearing on the motion to reconsider. Wife testified that the cost of living in Bozeman was high and she had wanted to remain in Virginia.

Wife was currently employed as a program manager for Montana State University earning about $43,000 a year. She also had two other part-time jobs, as an online instructor for both Germanna Community College and Southern New Hampshire University. She stated that both part-time jobs were contract jobs and that she did not know if either position would be renewed. Wife did not want to continue her online employment with Southern New Hampshire University because she was "overwhelmed" and "struggling to get everything finished by deadline" and only had the job "[j]ust to be able to make ends meet." She testified that she was making on average about $800 a month from her job at Germanna Community College and $1,000 from Southern New Hampshire University.

Wife further testified that she needed a new car because her current vehicle had over 207,000 miles on it. She noted that most cars in Montana had four-wheel drive because of the weather. Wife also stated that she needed new warmer clothes and boots for the climate in Montana. Wife had about $14,000 in credit card debt. She introduced a worksheet showing her expenses and testified that she had expenses in the amount of $6,590 per month. Wife testified that her current standard of living was "[n]owhere remotely close" to that she had enjoyed during the marriage.

Wife stated that in June 2019 husband was ordered to pay her $94,500 in spousal support arrearage from his TSP, but that she had only received $10,000 of that amount. She also noted that the $800 a month she was receiving from husband was the first time in the four years since the divorce that husband had paid her without being compelled to do so.

Wife was not currently receiving her portion of husband's retirement annuity. She had called and sent letters to OPM in an attempt to obtain her portion of the retirement annuity but

had been unsuccessful in her efforts.  Wife testified that when the annuity was eventually distributed to her, she would use those funds for her retirement savings because she was "not vested anywhere," but that doing so would leave her with a negative monthly balance.  She admitted that she had received $255,000 from husband's TSP in the divorce decree and had not been drawing upon those funds.

On October 24, 2019, the circuit court issued a letter opinion denying husband's motion to reconsider, and this ruling was reflected in a final order entered on December 2, 2019.  In its ruling, the court held that husband's retirement from DHS was not a material change in circumstances meriting modification of the spousal support payment.  The court found that while husband had lost income due to his retirement, he was "still young enough and ha[d] enough assets from which he can continue to pay the amount of spousal support ordered in the final decree of divorce."  Further, "[u]nlike [wife], [husband] presented no evidence that he [was] working three jobs."

The circuit court also found that, even assuming that husband's retirement "rose to the level of a material change in circumstances, the financial needs of [wife] also merit consideration."  The court noted that wife was not voluntarily unemployed and was "attempting to maintain three . . . jobs and is still struggling financially."  In addition, the court pointed out that the parties had agreed that wife would not work during their marriage.  The court "accept[ed] [wife's] testimony, including, without limitation, her testimony on her financial situation."

The court also made certain determinations regarding whether husband's retirement was foreseeable, finding that he "knew or should have known when the . . . [c]ircuit [c]ourt entered the final decree in 2015 that he would be required to retire from DHS either because of the court's fault-based divorce or the mandatory retirement age."  The court also noted that "there

- 7 -

[was] no evidence before [it] that [husband] presented evidence on the issue of retirement from DHS at the equitable distribution hearing."

Husband now appeals the denial of his motion for reduction in spousal support.

## II. ANALYSIS

### A. Change in Circumstances Warranting Modification

Husband argues that the circuit court erred in ruling that his reaching the mandatory retirement age was not a material change in circumstances meriting modification of spousal support.[7]

"Spousal support determinations typically involve fact-specific decisions best left in the 'sound discretion' of the trial court." Brandau v. Brandau, 52 Va. App. 632, 641 (2008) (quoting McKee v. McKee, 52 Va. App. 482, 489 (2008) (*en banc*)). "A trial court is vested with 'broad discretion in deciding whether a material change in circumstances warrants a modification in the amount of support.'" Driscoll v. Hunter, 59 Va. App. 22, 35 (2011) (quoting Reece v. Reece, 22 Va. App. 368, 373 (1996)). In an appeal concerning the modification of a spousal support award, "the trial court's findings must be accorded great deference." Moreno v. Moreno, 24 Va. App. 190, 195. "In determining whether credible evidence exists, the appellate court does not retry the facts, reweigh the preponderance of the evidence, or make its own determination of the credibility of witnesses." Id. (quoting Wagner Enters., Inc. v. Brooks, 12 Va. App. 890, 894 (1991)).

Circuit courts have the authority to "increase, decrease, or terminate" spousal support "as the circumstances may make proper." Code § 20-109(A). "The moving party in a petition for modification of support is required to prove both a material change in circumstances and that this

---

[7] Although this is husband's third assignment of error, we address it first for clarity, because our analysis on this issue is relevant to our resolution of husband's remaining assignments of error.

change warrants a modification of support." Barrs v. Barrs, 45 Va. App. 500, 506 (2005) (quoting Schoenwetter v. Schoenwetter, 8 Va. App. 601, 605 (1989)). "Code § 20-109 grants courts continuing jurisdiction to modify awards where changed circumstances are demonstrated." Blank v. Blank, 10 Va. App. 1, 4 (1990). "The material change in circumstances must have occurred after the most recent judicial review of the award." Id. Further, the material change in circumstances "must bear upon the financial needs of the dependent spouse or the ability of the supporting spouse to pay." Hollowell v. Hollowell, 6 Va. App. 417, 419 (1988).

In the instant case, this Court is examining husband's challenge to the circuit court's denial of his motion for modification of spousal support, and as the moving party, he bears the burden of establishing a material change in circumstances warranting modification. See Richardson v. Richardson, 30 Va. App. 341, 347 (1999) ("In a petition for modification of child support and spousal support, the burden is on the moving party to prove a material change in circumstances that warrants modification of support.").[8]

In the instant case, the evidence elicited at the hearings showed that husband's income dropped significantly following his retirement from DHS. In 2015, the year of the parties' divorce, husband's income from DHS was $158,163, and he earned $159,764 from DHS in 2016. At the time of the modification hearings, his annual income at his current position with Envoy Air was significantly lower—he earned $55,692.04 in annual income in 2018. However, although husband's monthly income overall has diminished, he also receives his monthly retirement annuity disbursement of $1,609.14, or $19,309.68 per year.

---

[8] While the circuit court's analysis as to whether it first determined that a material change in circumstances occurred is somewhat unclear, we note that the court fully considered the merits of husband's motion. In its ruling, the court first considered whether a material change of circumstances occurred, and then assumed that if there had been a material change in circumstances, whether this change warranted modification. Therefore, the issue of whether or not the circuit court initially found a material change in circumstances is moot, as the court made findings as to whether a material change in circumstances warranted modification in this case.

The record also demonstrates that wife's income has increased since the entry of the divorce decree. At the time of the divorce, wife's average gross monthly income was $1,102, totaling $13,224 a year. At the time of the September 24, 2019 hearing, wife had a new job at Montana State University earning approximately $43,000 a year and two part-time, online jobs where she earned an additional $1,800 month. In addition, OPM was automatically deducting $3,501.60 per month from husband's annuity retirement as wife's portion of husband's annuity benefit that she was awarded pursuant to the divorce decree; however, at the time of the September 24, 2019 hearing, wife was not receiving these funds from OPM.

Husband contends that his decreased income, in conjunction with wife's receipt of a portion of his retirement benefits, merits a reduction in support because wife's income has increased and thus her financial needs are reduced. He also asserts that it was an abuse of discretion for the court to require the complete depletion of his remaining assets to support wife, whose income and assets now exceed his. However, given the circuit court's broad discretion in determining whether modification of a spousal support award is warranted, we reject both arguments.

Wife's Financial Needs

Husband argues that with the addition of $3,500 in monthly spousal support, wife's total annual income would be approximately $151,000, while husband's annual income would be about $33,000, and that wife's needs do not "justify such a lop-sided award."

Contrary to husband's argument, we conclude that the record supports the circuit court's finding that despite her increase in income, wife was "still struggling financially." At the September 24, 2019 hearing, wife introduced a worksheet showing that her expenses totaled $6,590 per month. She also testified as to these expenses, stating that her financial needs were higher because she had moved to Montana, a colder climate state, to obtain a job with health

insurance. Wife testified that she needed a new car with four-wheel drive and new, warmer clothes, and that she owed about $14,000 in credit card debt. The court noted that it "accept[ed] [wife's] testimony, including, without limitation, her testimony on her financial situation." "It is well established that the trier of fact ascertains a witness' credibility, determines the weight to be given to their testimony, and has discretion to accept or reject any of the witness' testimony." Layman v. Layman, 62 Va. App. 134, 137 (2013) (quoting Street v. Street, 25 Va. App. 380, 387 (1997) (*en banc*)). Here, the circuit court accepted wife's testimony regarding her financial needs, and we do not disturb this finding on appeal.

This Court acknowledges the disparity in income that would result from husband's payment of the previously ordered amount of spousal support. However, we conclude that this disparity is justified in this case where wife's financial needs are greater as a direct result of husband's failure to pay the $3,500 in spousal support awarded to wife in the divorce decree. Husband was in arrears for spousal support in the amount of $94,500, and wife had received only $10,000 of that amount at the time of the September 24, 2019 hearing. Husband's payment to wife of $800 a month, which began in May 2019, was the first time in the four years since the divorce that husband had paid wife without being compelled to do so. Had wife received the spousal support payments owed to her at and since the time of the divorce, her financial needs would likely be far less than they were at the time of the motion for reduction in spousal support. In this case, where husband willfully failed to pay the spousal support awarded to wife in the divorce decree and was in substantial arrears for support, we are not persuaded by his assertion that wife's financial needs were not so great due to her taking on three jobs as a result of not receiving that spousal support.

Here, a review of the record demonstrates that wife's financial needs were significant at the time of the September 24, 2019 hearing, and the court did not err in taking these needs into consideration despite wife's increased income and husband's decreased income.

Husband's Ability to Pay

Husband further argues the court erred in finding that he, like the payor spouse in Driscoll, still has enough assets from which he can pay the amount of spousal support ordered in the divorce decree.

In Driscoll, husband sought modification of his spousal support obligation because of a substantial reduction in his income following his retirement from practicing oral surgery. 59 Va. App. at 27. On appeal to this Court, he argued that the circuit court erred in failing to "'specifically hold[ ] that [husband's] retirement was a material change in circumstances.'" Id. at 32-33 (alterations in original). We concluded that

> [a] material change in circumstances, by itself, does not require the alteration of a spousal support award. Instead, the party seeking modification must show, in addition to a material change in circumstances, that the change "'warrants a modification of support.'" Moreno v. Moreno, 24 Va. App. 190, 195 (1997) (quoting Schoenwetter v. Schoenwetter, 8 Va. App. 601, 605 (1989)). A modification of support is warranted when it "'bear[s] upon the financial needs of the dependent spouse or the ability of the supporting spouse to pay.'" Id. at 195 (quoting Hollowell v. Hollowell, 6 Va. App. 417, 419 (1988)). Therefore, even if the trial court had committed error in declining to hold that husband's retirement constituted a material change in circumstances, that alone would not provide a basis for the trial court to alter the spousal support obligation.

Id. at 33 (alteration in original). Rather, "[t]he crucial question, once a material change in circumstances has been shown, is the 'ability of the supporting spouse to pay.'" Id. (quoting Moreno, 24 Va. App. at 195). "The fact that the payor husband may have to draw from other sources, such as the principal of investment or savings accounts, in order to make his spousal

support payment does not by itself require the trial court to suspend or reduce his spousal support obligation." Id. at 33-34.

Here, in the circuit court's October 24, 2019 letter opinion, the court states that husband, like the payor spouse in Driscoll, "has enough assets from which he can continue to pay the amount of spousal support ordered in the final decree of divorce." However, husband argues that this analysis is flawed because he is in a much different and weaker financial position than the payor spousal in Driscoll. Husband is correct in this assertion—in Driscoll, while due to retirement the payor spousal's monthly expenses were greater than his monthly income, he still had $3.5 million in other assets. Id. at 27-28. While there is a great disparity in assets between husband and the payor spouse in Driscoll, we find that the circuit court did not err in finding that husband still has the ability to pay the original spousal support amount. Here, in addition to his current salary and his retirement annuity, husband also has a substantial quantity of savings in his TSP account, which he testified that he was already using to pay wife $800 a month in spousal support as of May 2019. Based on these funds, the circuit court answered "[t]he crucial question" of whether husband had "the ability . . . to pay" in the affirmative, and we find no error in this determination. Id. at 33 (quoting Moreno, 24 Va. App. at 195).

However, husband contends that his TSP funds will be significantly depleted by post-divorce garnishments to satisfy his spousal support obligation, noting that after the $84,500 garnishment order is processed, his TSP will be reduced to $129,000. We find this argument unavailing, again noting that it was husband's own failure to pay his court-ordered spousal support obligation that will result in the diminishment of his TSP. Therefore, we again conclude that husband cannot complain that his assets are insufficient to pay the amount of spousal support awarded in the divorce decree when it was his own actions that will lead to the reduction of the asset he can use to pay his spousal support obligation.

Thus, in the instant case, given wife's continuing need for support and husband's ability to pay that support, the change in circumstances in husband's reduction in income due to his retirement did not warrant a reduction in the amount of spousal support previously awarded to wife.

### B. Implicit Imputation of Income to Husband

Husband further contends that the circuit court erred in implicitly imputing income to him because there was no evidence that he is capable of earning more than his actual post-retirement income.

"A court may under appropriate circumstances impute income to a party seeking spousal support." McKee v. McKee, 52 Va. App. 482, 489 (2008) (*en banc*) (quoting Srinivasan v. Srinivasan, 10 Va. App. 728, 734 (1990)). Whether to do so "is simply one component of calculating the 'amount' of support under the statutory factors . . . ." Brandau v. Brandau, 52 Va. App. 632, 638 (2008). "Whether to impute income also depends, in part, on a conscientious consideration of all factors, including the 'standard of living established during the marriage,' the 'duration of the marriage,' and the positive and negative 'contributions, monetary and nonmonetary, of each party to the well-being of the family.'" Id. at 638–39 (quoting Code § 20-107.1(E)(2), (3), and (6)).

Husband argues that the undisputed evidence in this case was that his earned income decreased from around $150,000 at the time of the divorce to $55,692.04 at the time of the modification hearings. Husband further asserts that the evidence was uncontested that, beginning no later than June 2018, it was impossible for him to hold the same job that he had at the time of the divorce due to DHS's mandatory retirement rules. In its October 24, 2019 letter opinion, the circuit court acknowledged that husband's income had decreased due to his retirement but found that he was "still young enough . . . to continue to pay the amount of

- 14 -

spousal support ordered in the final decree." Further, unlike wife, husband had "presented no evidence that he is working three jobs." Husband argues that in doing so, the circuit court implicitly imputed income to him without any evidence that his current earning capacity exceeded his actual income. Husband argues that such an implicit finding of voluntary underemployment was plainly wrong based on the evidence before the court.

We find husband's argument unpersuasive. In the final decree of divorce, the circuit court noted that husband was fifty-three years old and in good health, that there were no physical conditions that would prevent him from seeking employment, and also specifically found that husband's earning capacity was "significantly high." At the modification hearings, husband testified that his security clearance would not have been renewed due to language in the divorce decree regarding his fault, and that he would have been forced to retire despite the non-renewal of his security clearance when he turned fifty-seven in June 2019. The court, in its October 24, 2019 letter opinion, noted husband's mandatory retirement date but also found that husband was "still young" at fifty-eight years old and, unlike wife, was not working two part-time jobs. These findings were not an imputation of income to husband or a finding that he was voluntarily underemployed; rather, these were general findings related to husband's and wife's circumstances at the time of the modification hearing as opposed to their circumstances at the time of the entry of the original spousal support award. Husband was young enough to potentially find other employment, and could, like wife, work other jobs to support himself and pay his court-ordered support obligation.

In addition, husband argues that any implicit imputation of income to him was in error because wife failed to present any evidence of his current ability to earn additional income beyond what he makes as a pilot. In addition to our finding that there was no implicit imputation of income to husband, we also reject this argument because it confuses a basic principle

- 15 -

regarding modification hearings. As noted above, in a spousal support modification hearing, "the burden is on the moving party to prove a material change in circumstances that warrants modification of support." Richardson, 30 Va. App. at 347. Here, it was husband's burden to prove that a material change in circumstances warranting modification had occurred since the entry of the spousal support award in the final decree of divorce. The final decree of divorce found that husband's earning capacity was high. Therefore, husband, as the moving party at the modification hearing, had the burden of proving that his earning capacity was no longer as high as it was at the time of the divorce degree. There was no burden on wife to produce evidence regarding husband's earning potential; the only burden to produce evidence was on husband. [9]

Therefore, we find that husband's argument that the circuit court erred in implicitly imputing income to him is flawed for two reasons—because (1) the circuit court did not in fact implicitly impute income to husband; and (2) husband, not wife, had the burden of proving that circumstances had changed since the original entry of the spousal support award in a way that warranted modification of that award. [10]

---

[9] In addition, we note that, according to the circuit court's April 16, 2019 letter opinion, husband "also testified concerning his efforts to secure employment consistent with his salary when he retired" at the March 11, 2019 modification hearing. This specific testimony is not included in the statement of facts. Therefore, husband himself could have provided the basis for the court to determine that his earning capacity had diminished since the entry of the divorce decree in 2015. However, we are unable to assess whether the court's consideration of husband's earning capacity following his retirement was in error, because this testimony was not made a part of the record.

[10] On brief, husband argues that the reasoning of an unpublished decision of this Court, Szawronski v. Szawronski, No. 1873-18-2, 2019 WL 3292274 (July 23, 2019), supports his position that the circuit court in this case erred in implicitly imputing income to him. However, Szawronski is clearly disguisable from the instant case. In Szawronski, the circuit court found a material change of circumstances due to husband's involuntary reduction of income at his tax business, but found that although his income had decreased involuntarily, his earning capacity had not decreased. Id. at *3. Our Court held that these were inconsistent findings, and thus the circuit court must have implicitly found that husband was voluntarily unemployed and imputed income to husband. Id. at *3-4. Here, the circuit court made no specific finding as to whether

- 16 -

C. <u>Lack of Evidence of Issue of Retirement at Equitable Distribution Hearing</u>

Finally, husband argues that the circuit court erred in using the lack of evidence on the issue of his retirement at the parties' 2015 equitable distribution hearing as a factor in support of continuing spousal support at the original level.

The parties' 2015 divorce decree is silent on the issue of retirement. In its October 24, 2019 letter opinion, the circuit court stated that "there is no evidence before the court that [husband] presented evidence on the issue of retirement from DHS at the equitable distribution hearing." The circuit court also found that "[husband] knew or should have known when the . . . [c]ircuit [c]ourt entered the final decree in 2015 that he would be required to retire from DHS either because of the court's fault-based divorce or the mandatory retirement age." Husband asserts that the court erred in relying on the silence of the four-year-old divorce decree on the issue of retirement in denying a modification on the grounds of his retirement.

In the instant case, we view any potential error in considering the lack of evidence of husband's efforts to present evidence regarding his retirement at the equitable distribution hearing was harmless.

Non-constitutional error is harmless "[w]hen it plainly appears from the record and the evidence given at the trial that the parties have had a fair trial on the merits and substantial justice has been reached." In such a case, "no judgment shall be arrested or reversed . . . for any error committed on the trial." Code § 8.01-678.

> "If, when all is said and done, [it is clear] that the error did not influence the [factfinder], or had but slight effect, . . . the judgment should stand. . . . But if one cannot say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error, it is impossible to conclude that substantial rights were

husband's earning capacity had decreased; therefore, there were no inconsistent findings in this case, and we thus find the reasoning of <u>Szawronski</u> inapplicable.

- 17 -

not affected. . . . If so, or if one is left in grave doubt, the [judgment] cannot stand."

Driscoll, 59 Va. App. at 36 (alterations in original) (quoting Clay v. Commonwealth, 262 Va. 253, 260 (2001)).

In this case, the circuit court's consideration of the fact that there was no evidence in the record that husband had presented evidence regarding his retirement at the parties' equitable distribution hearing had little or no impact on the court's ultimate disposition. The court found that there was no material change of circumstances warranting modification based upon husband's continuing ability to pay the amount of spousal support awarded in the divorce decree and wife's continuing financial need for that level of spousal support. As noted above, we find that both of these determinations are clearly supported by evidence in the record. Therefore, any consideration the court gave to the lack of evidence regarding whether husband presented evidence about his retirement at the equitable distribution hearing or the foreseeability of husband's retirement would have not altered the outcome. Therefore, even assuming error, any such error was harmless.

Attorney's Fees

Wife requests that this Court award her attorney's fees and costs incurred on appeal. "[W]hether to award attorney's fees and costs incurred on appeal is discretionary." Friedman v. Smith, 68 Va. App. 529, 545 (2018). "More specifically, this Court's decisions regarding attorney's fees and costs are based on its consideration of factors including whether the requesting party prevailed, whether the appeal was frivolous, whether either party generated unnecessary expense or delay in pursuit of its interests, as well as 'all the equities of the case.'" Id. at 546 (quoting Rule 5A:30(b)(3)). This case "addressed appropriate and substantial issues and . . . neither party generated unnecessary delay or expenses in pursuit of its interests." Estate

of Hackler v. Hackler, 44 Va. App. 51, 75 (2004).  Therefore, we deny wife's request for attorney's fees and costs incurred in this appeal.

### III. CONCLUSION

We hold that the circuit court did not err in ruling that husband's reaching the mandatory retirement age was not a material change in circumstances warranting modification of the previously entered spousal support award.  In addition, we find that the circuit court did not implicitly impute income to husband, and that it was his burden to produce evidence establishing a material change in circumstances warranting modification during the modification hearing. Finally, if the circuit court erred in considering the lack of evidence on the issue of husband's retirement at the 2015 equitable distribution hearing as a factor in support of continuing spousal support at the original level, we find that this error was harmless.  Accordingly, we affirm.

Affirmed.