# Richmond

ROBERT W. WOOD, ET ALS. V. HETTIE M. AND J. J. QUILLIN.

November 12, 1936.

Present; Holt, Hudgins, Gregory and Eggleston, JJ.

The opinion states the case.

*C. V. Werne,* for the plaintiffs in error.

*M. J. Fulton* and *S. H. Bond,* for the defendants in error.

*GREGORY, J., delivered the opinion of the court.

For the sake of brevity, the parties will be referred to in accordance with the respective positions occupied by them in the court below—the plaintiffs in error as the defendants and the defendants in error as the plaintiffs.

---

*Due to unavoidable reasons it became necessary to reassign the writing of this opinion.

The defendants were partners operating in Richmond under the firm name of T. W. Wood and Sons. They were seed merchants. The plaintiffs were farmers residing in Scott county and they ordered by mail from the defendants one-half pound of White Burley tobacco seed sending their check for the purchase price along with the order. The seed were sent to the plaintiffs by the defendants by mail in a package addressed to Hettie M. Quillin. In due time the package arrived and bore the label: "½ pound White Burley Tobacco." The order for the seeds had been written upon one of the blank order forms taken from a catalogue of the defendants. The order blank was filled in and signed by Hettie M. Quillin.

The plaintiffs carefully and properly prepared their tobacco beds at considerable expense. The seeds were planted in the usual way under favorable conditions. They germinated and grew into plants and at a seasonable time the plants were transplanted in the fields that had been also carefully prepared for the growth and cultivation of Burley tobacco. The plants grew and developed just as White Burley tobacco plants do.

It is impossible to establish a difference between White Burley tobacco seeds and the seeds of other varieties. It is likewise impossible to establish a difference in the growing White Burley tobacco plants and the other varieties until the plants begin to mature. When the plants begin to mature, friends and neighbours of the plaintiffs observed that they did not look like White Burley plants and they commented on the peculiar appearance of the plants to the plaintiffs. After this doubt had been raised the plaintiffs notified the defendants that the seeds which had been sold by them were not White Burley seeds but the defendants made no examination of the tobacco. Thereafter it became evident that the tobacco was not White Burley but a dark variety which needed to be "flue cured" before marketing. It was cut and marketed to the best advantage but it failed to bring a sufficient sum to pay the cost of transporting it to the market. The entire crop was a total loss to the plaintiffs:

The land in Scott county is suitable for the cultivation of

Burley tobacco but not for the cultivation of "flue" or dark tobacco. The farmers there are equipped to cure Burley tobacco which may be "air-cured" while they are not equipped to cure "flue" tobacco which must be cured by fire in barns or "flue-cured." Again, the available markets for Scott county tobacco are what are termed the Burley markets while there are no available markets for "flue" or dark tobacco.

There was no substantial conflict in the evidence. The case was tried by a jury and they were fully instructed upon the applicable law. A verdict was returned by the jury awarding the plaintiffs damages of $1,536, and the court refused to disturb the finding.

The record shows beyond a doubt that the plaintiffs ordered from the defendants White Burley tobacco seeds but that they did not receive the kind of seeds they purchased. A clear breach of contract has been shown by the evidence. In addition to that established fact the provisions of section 1154 of the Code disclose that all seedsmen who sell farm or garden seeds to be used in producing crops shall be bound as guarantors that such seed are true to kind and name as represented at the time of sale. The language of the statute is as follows:

"*Purity of all field and garden seed; liability of the sellers of all such seed as guarantors.*—All seedsmen and others who sell farm or garden seeds to be used in producing crops for sale or for family use shall be bound as guarantors that such seeds are true to kind and name as represented at the time of sale, whether said seeds were raised by the seller or by another; and if such seeds are sold by an agent the principal shall be bound by the representations of said agent in regard to the kind and name of the seed so sold.

"If any paper or package containing seed sold in this State for planting or seeding has printed or written thereon the name, kind, or quality of the seeds therein the seller shall be bound in the courts of this Commonwealth by the same written or printed statements unless it be affirmatively proven that there was some other agreement between the parties in respect hereto."

The defendants in order to escape the force and effect of the statute invoke certain provisions embodied in the order blank used by the plaintiff and upon the package in which the seed were received, which provisions, it is claimed, the plaintiff accepted by receiving and planting the seeds. Under those provisions they contend that they are relieved of the statutory guaranty. They also challenge the constitutionality of the statute and declare that, even if constitutional, it has no application here when properly construed.

A solution of the respective contentions of the parties as set forth above will be determinative of all the various assignments of error except one in which is embodied a preliminary question of amendment of the notice.

Bearing in mind this particular language of the statute, "shall be bound as guarantors that such seeds are true to kind and name as represented at the time of sale," and considering the language (to be presently quoted), printed in the order blanks taken from the catalogue and upon the package containing the seeds, it is quite obvious that there never has existed any agreement between the parties whereby it was intended to contract away the guaranty in the statute which is for the benefit of the purchaser of seeds, namely, that the seeds "are true to *kind and name*."

The language on the order blank follows:

"Wood's seeds are thoroughly recleaned, tested and of the very highest quality. We guarantee them to be as represented in purity, germination, weed seed content and origin up to the full amount of the purchase price. Owing to so many factors over which we have no control, such as weather, soil and seeding conditions, we cannot guarantee the crop.

"We offer you the best seeds because it is the fair thing to do and because we want to stay in business and grow. But we cannot control planting and cultural methods and weather and soil conditions, all of which affect the outturn of crops."

If it be conceded that the plaintiffs are bound by this language a critical examination of it discloses that it in no way impairs the statutory guaranty imposed upon the defendants that the seeds are "true to kind and name."

The language printed upon the package containing the seeds follows:

"T. W. Wood and Sons give no warranty, express or implied, as to description, quality, productiveness, or any other matter, of any seeds, bulbs or plants they send out and they will not be in any way responsible for the crop. If the purchaser does not accept the goods on these terms they are at once to be returned."

This language like the other in no way abrogates the statutory guaranty imposed upon the defendants, even if it be conceded that they have the right to nullify the statute by an independent contract.

There has never been any claim by the plaintiffs that the seeds were not clean or that they were not of good quality or pure. They germinated and grew and produced a good crop of *dark* tobacco. Their claim is, and always has been, that the seeds were not White Burley seeds—the kind they ordered. Their claim is, therefore, that the seeds were not true to *kind and name* as represented at the time of sale, and there is no language either in the order blank or upon the package that relieves the defendants from the guaranty imposed upon them by the statute. In other words, even if it be conceded that parties could contract away the statutory guaranty, there is no evidence here of any such contract.

Counsel have made elaborate arguments and have entered into discussion of constitutional questions which, in our opinion, in the light of the facts presented by this record, have no place in the case. For this reason we deem it unnecessary to follow counsel in all of their argument. We confine ourselves to what we deem to be the controlling points in the case. In passing, however, we are of the opinion that there is no sound ground for challenging the constitutionality of the statute upon the record here. The defendants declare that the statute, as applied here, prohibits the right of freedom of contract which is guaranteed by both the Federal and State Constitutions. They earnestly argue that they have the right to contract against the statutory guaranty, and if the statute is construed to deprive them of this right it is unconstitutional,

but, as we have already seen, the record fails to show that they made any contract whereby they were *not* to be bound as guarantors that the seeds would be true to *kind and name* as represented. The only contract found in the record is the one which the defendants broke, and when they committed a breach of that contract by sending "flue" or dark tobacco seeds to the plaintiff instead of White Burley, they were liable for the breach even in the absence of the statute. This, of course, will obviate the necessity of deciding any constitutional question. Courts do not refuse to pass upon the constitutionality of a statute in a proceeding in which its determination is essential, but they do refuse to determine such an issue where it is not necessary to a decision of the case.

To state it in another way, we conclude that the defendants are not in a position to challenge the statute because they have not been curtailed or limited in their constitutional right to freedom of contract by the statute, and even if the statute does offend the constitutional provisions either State or Federal, the defendants, under the facts here, would still be liable at common law for damages for their plain breach of contract. Therefore, if the statute were declared unconstitutional the defendants would not thereby be relieved of liability.

There are a number of cases referred to in the petition. None of them is applicable here because the statutes involved in them are entirely different from our statute, and for the further reason that liability exists here in the absence of statute.

Before the plaintiffs had concluded their evidence it tended to show that the damages exceeded the amount that had been laid in the notice of motion. They then moved the court to permit them to amend the notice in respect to the *quantum* of damages. This motion was granted, over the objection of the defendants, and the damages alleged in the notice were thus increased from $1,000 to $1,800. The defendants made no motion for a continuance on account of the allowance of the amendment, nor did they declare at the time that they had been taken by surprise.

Section 6250 of the Code and the many cases referred to in the annotation thereto, furnish abundant authority for the amendment. If the defendants had moved for a continuance and had shown that they had been taken by surprise by the amendment or prejudiced thereby, no doubt the court would have granted their motion and continued the case. In the absence of such a motion we think the court was clearly right in allowing the amendment and proceeding with the trial. The ends of justice demanded that the case be promptly ended upon its merits. The record here is bare of any ground for fair inference that the defendants suffered an injury by the allowance of the amendment.

There was no assignment of error directed to the giving or refusing of instructions, therefore those given became the law of the case and are binding upon us, irrespective of their correctness.

Upon the whole case, we are of opinion that the judgment is clearly right and should be affirmed.

*Affirmed.*