# Richmond

HAROLD BABBITT v. JOSEPH MILLER.

May 7, 1951.

Record No. 3769.

Present, Eggleston, Spratley, Buchanan and Miller, JJ.

The opinion states the case.

*Nathan L. Silberberg,* for the plaintiff in error.

*Emery N. Hosmer* and *Nathaniel Goldberg,* for the defendant in error.

SPRATLEY, J., delivered the opinion of the court.

In April, 1947, Babbitt purchased from Shirlington Super Markets, Inc., the drug department of one of its supermarkets in Arlington county. At the same time, he also obtained a lease from the corporation for one of its store premises. The lease provided: ''As rental for said premises, the lessee agrees to pay the sum of $15,000 in monthly installments of $250, beginning with the first day of April, 1947.''

Babbitt paid his rent usually on or about the first of each month up to April, 1948, for which month he made payment on April 14th. In the last week of that month, Babbitt told Miller, who was then and had been for a long time president of the lessor corporation, the landlord, that his business was slow, and he would be late in the payment of his May rent. Some conferences relating to the extension of time for the payment of rent for that month were had between them. Babbitt said he was led to believe that an extension would be granted him. Miller said no agreement for an extension was reached. At any rate, the rent was not paid by May 8th. On that day Miller, in his capacity as President of Shirlington Super Markets, Inc., and as agent of his corporation, appeared before the Hon. Hugh Reid, Judge of the County Court of Arlington, and made affidavit, pursuant to section 55-230 of the Code of Virginia, 1950, that Babbitt was indebted to his corporation for rent past due. The affidavit reads as follows:

''This day, Joseph Miller, President of Shirlington Super Markets, Incorporated, a corporation, made oath before me, Hugh Reid, Trial Justice of the County Court of Arlington County, Virginia, in the said County, that he verily believes Harold Babbitt, tenant, is justly indebted to the said Shirlington Super Markets, Incorporated, a corporation, in the sum of TWO HUNDRED FIFTY DOLLARS ($250.00), due for rent, reserved upon contract from said tenant, * * *.''

The trial justice then issued a distress warrant against the

goods and chattels of Babbitt on the premises leased. It contained the following recital:

"WHEREAS, Joseph Miller, President of Shirlington Super Markets, Incorporated, a corporation, hath this day made oath before me, Hugh Reid, Judge of the County Court of Arlington County, Virginia, that he verily believes that Harold Babbitt his tenant, is justly indebted to him in the sum of TWO HUNDRED FIFTY DOLLARS ($250.00), for rent reserved upon contract, * * * *"

Judge Reid said that he used the titles of Trial Justice and Judge of the County Court "interchangeably." (Acts of Assembly, 1948, chapter 346).

On the same day Shirlington Super Markets, Inc., instituted an action of unlawful detainer against Babbitt for the premises. Final judgment in that action was entered in favor of the corporation on June 3, 1948. There was no appeal.

Babbitt did not contest the distress warrant for rent. He did not file an affidavit, under section 55-232, Code of 1950,[1] that he was unable to give the bond required by Code, section 8-450, or that he had a valid defense under Code, section 8-453. Consequently, the warrant was not returned to the Circuit Court of Arlington county for trial. The property levied upon was sold on June 14, 1948, by the Sheriff of Arlington county.

A garnishee summons, concerning the proceeds of the above sale, was sued out by the Capital Cigar & Tobacco Company, Inc., a judgment creditor of Babbitt, on June 28, 1948, in the County Court of Arlington County, to which Babbitt and the Sheriff of Arlington county were made parties. Shirlington Super Markets, Inc., filed a petition praying the court to administer the funds in the hands of the sheriff. The proceeding was removed to the circuit court of the above county, and process was served on both defendants. Babbitt did not appear or answer. On October 15, 1948, upon a hearing, the circuit court

---

[1] "On affidavit by a tenant, whose property has been levied on under a warrant of distress, that he is unable to give the bond required in sec. 8-450 and that he has a valid defense under sec. 8-453, the officer levying the warrant shall permit the property to remain in the possession and at the risk of the tenant, and shall return the warrant, together with the affidavit, to the first day of the next term of the circuit court of his county or corporation court of his corporation. Thereupon the landlord after ten days' notice in writing to the tenant may make a motion before such court for a judgment for the amount of the rent and for a sale of the property levied on, as aforesaid, to which motion the tenant may make such defense as he is authorized to make, under sec. 8-453 to an action or motion on the bond when one is given."

held that Shirlington Super Markets, Inc., had obtained, by the distress warrant for rent, a prior lien against the proceeds from the sale of the goods and chattels of Babbitt, and ordered the sheriff, out of said funds in his hands, to pay the amount of the rent claimed, plus court costs, to Shirlington Super Markets, Inc., in satisfaction of its lien and claim for rent, and the remaining portion of such funds to Capital Cigar & Tobacco Company, Inc., on account of its lien of garnishment and judgment.

It is apparent throughout each of the proceedings mentioned, that the distress warrant of May 8th was treated and considered as having been issued and executed in favor and behalf of Shirlington Super Markets, Inc., the landlord of Babbitt.

On March 11, 1949, Babbitt filed a voluntary petition in bankruptcy, in which he listed a cause of action against Shirlington Super Markets, Inc., as one of his assets, but listed no claim against Miller. He was adjudged a bankrupt; trustee in bankruptcy was appointed and qualified; and on June 30th, he was discharged in bankruptcy, his largest creditor being Shirlington Super Markets, Inc., for rent in the sum of approximately $8,000.

On May 9, 1949, Babbitt instituted this action, based on section 8-651, Code of Virginia, 1950,[1] by notice of motion for judgment, seeking to recover damages "by reason of the unlawful and improper warrant of distress sued out" by defendant. Upon trial, the jury returned a verdict of $15,000 in favor of plaintiff. The trial court sustained a motion of the defendant to set aside the verdict as contrary to the law and the evidence and without evidence to sustain it, and entered final judgment for defendant.

Plaintiff asks us to reverse the judgment of the trial court on two grounds, first, that there was sufficient evidence to sustain the verdict of the jury, and, second, that the court erred in refusing to require defendant to leave with the clerk of the court a stenographic transcript of the testimony and incidents of trial. Defendant counters with fourteen cross-assignments of error.

Five days were consumed in the trial of the case. Much of the testimony related to questions which were either not put in issue, or were withdrawn from the consideration of the jury.

[1] "If property be distrained for any rent not due, or attached for any rent not accruing, or taken under any attachment sued out without good cause, the owner of such property may, in an action against the party suing out the warrant of distress or attachment, recover damages for the wrongful seizure, and also, if the property be sold, for the sale thereof. (Code 1919, section 5783.)"

Throughout the trial and in framing the issue, plaintiff based his right of recovery on the sole ground that defendant personally sued out a distress warrant against him when the relation of landlord and tenant did not exist between them, and there was no rent due from plaintiff to defendant.

The instructions to the jury restricted the controlling issue to the question whether or not Miller asked for or sought the legal warrant for rent due to him individually. The failure of the recitals of the warrant to follow the recitals in the affidavit produced the issue which arose. In view of the circumstances, only so much of the evidence as is necessary to a decision upon this issue has been stated.

There was no dispute of the fact that the relation of landlord and tenant did not exist between Babbitt and Miller. Both agree that Babbitt's landlord was Shirlington Super Markets, Inc. The lease showed this. Miller, at all times, claimed that he acted solely as agent of his corporation in suing out the warrant. In this he was supported by the recitals in the affidavit above mentioned, and by Judge Reid who issued the warrant. Babbitt's claim is based solely on the ground that Miller had caused to be distrained the property of the former for rent not due or accruing to the latter. However, as we have seen, Miller did not ask for a warrant for rent due him.

Counsel for plaintiff repeatedly stated during the trial that the question of rent due the corporation was irrelevant and had no materiality whatsoever in this proceeding. Upon his insistence, the court took away from the jury the question whether any rent was due to the corporation. Defendant was not allowed to put in evidence the record in the unlawful detainer case, for the purpose of showing a final adjudication that rent was due the corporation on May 8, 1948.

The court gave two instructions covering the controlling issue, according to plaintiff's theory of the liability of the defendant.

Instruction A was given by the court of its own initiative. Its pertinent portion reads as follows:

"The Court instructs the jury that if you believe, that a preponderance of the evidence in this case shows that the defendant in this case appeared before Hugh Reid, the Trial Justice of this County and asked for or sought a warrant of distress against the plaintiff, Harold Babbitt, containing a legal

claim for rent due to him, Joseph Miller, and that such warrant was issued by such Trial Justice and served by the Sheriff of Arlington County upon the plaintiff, on the 8th day of May, 1948; then you are further instructed that such warrant was illegally sued out, and that the defendant is liable to the plaintiff for the damages ensuing from such illegal warrant.

"You are further instructed that if you find for the plaintiff, you may award him such amount as, in your judgment, will reasonably compensate him for the damages he has suffered, both to his property and to his credit, good name, character and reputation, but not to exceed Fifty Thousand Dollars ($50,-000.00), in amount as sued for."

While instruction A was apparently intended to cover the whole case, instruction No. 3 was given at the request of the defendant, and reads as follows:

"The Court instructs the jury if they believe from the evidence that Joseph Miller, President of Shirlington Super Markets, Incorporated, appeared before Hugh Reid, Trial Justice of the County of Arlington, Virginia, and made oath that he believed that Harold Babbitt, tenant, was justly indebted to Shirlington Super Markets, Incorporated, in the sum of Two Hundred Fifty Dollars ($250.00), due for rent; that such affidavit was the only affidavit made in that case, and that the said Miller did not seek a warrant in his own behalf, then the Court instructs the jury that even though they may believe that Hugh Reid, Trial Justice, issued a warrant of distress on May 8th, 1948, reciting that Joseph Miller, President of Shirlington Super Markets, Incorporated, made oath that Harold Babbitt, his tenant, was justly indebted to him in the sum of Two Hundred Fifty Dollars ($250.00), for rent; then the Court tells the jury that the Trial Justice was without jurisdiction to issue such warrant in favor of Joseph Miller, and it is not binding on Joseph Miller, and is not evidence that Joseph Miller acted in that regard as an individual, and the jury should find in favor of the defendant."

The record shows no exception tendered to either of the above instructions, nor to several other instructions tendered and refused (Rule of Court 1:8), and no error with respect to instructions is assigned on appeal (Rule of Court 5:1 sec. 4).

There being no assignment of error directed to the giving and refusing of instructions, those given became the law of the case, and are binding upon us, irrespective of their correctness.

*Wood* v. *Quillin,* 167 Va. 255, 188 S. E. 216; *Acme Markets* v. *Remschel,* 181 Va. 171, 24 S. E. (2d) 430; *Ross* v. *Schneider,* 181 Va. 931, 941, 942, 27 S. E. (2d) 154.

The only testimony relating to the suing out of the distress warrant was that given by the defendant and Judge Reid, and their testimony is not controverted in a single respect.

Miller, when asked what took place when he appeared before Judge Reid, said:

"Yes, we appeared before Judge Reid with an affidavit which he swore me to tell the truth, which I did, that he owed the Shirlington Super Markets, Inc., $250.00 rental which was due on the first of that month.

      \*    \*    \*    \*    \*    \*

I came with counsel to Judge Reid's chambers and said that Harold Babbitt was in default on rent to the Shirlington Super Markets, Inc., in the sum of $250.00 and he made me swear to that document and asked me if I represented the Shirlington Super Markets, Inc., which I said I did, that I was president of the corporation and acting in that capacity, whereupon he attached his name to the affidavit which I had sworn to."

He said he signed no other paper and did not recall seeing any other.

Judge Reid testified as follows:

"Mr. Miller appeared in his capacity as President of Shirlington Super Markets and the affidavit so shows. He did not appear in any personal capacity. He appeared solely as an officer of the corporation, and a warrant of distress was issued, of course. \* \* \* the word 'his' in that warrant is a clerical error, and the corporation's name should have been in there.

      \*    \*    \*    \*    \*    \*

"He (Miller) appeared solely as an officer of the corporation. There was never any doubt in my mind about that."

The vice in plaintiff's argument arises from his contention that the recital in the distress warrant was *prima facie* evidence that Miller caused the warrant to be issued in favor of himself individually, and therefore sufficient to create a conflict with subsequent evidence of defendant to the contrary effect.

He overlooks the meaning of the words *prima facie. Prima facie* evidence is evidence which on its first appearance is suffi-

cient to raise a presumption of fact or establish the fact in question unless rebutted. It imports that the evidence produces for the time being a certain result, but that the result may be repelled. The presumption which arose upon the introduction of the warrant in evidence disappeared entirely in the face of the positive and uncontradicted evidence that the defendant, as agent of his corporation, only sought to distrain for rent due the corporation.

There was no conflict in the evidence here. There was a mistake in the issuance of the warrant; but that mistake was not due to any fault of the defendant.

A large portion of plaintiff's brief is devoted to the question of agency and to an attack upon the conduct and fairness of the trial judge during the progress of the trial.

The question of agency was not involved in the proceedings. Plaintiff's theory of the case and the issue of defendant's liability was whether or not defendant sued out the warrant of distress in his own favor, when no rent was due or accruing to him. Plaintiff, during the trial, apparently recognized that Joseph Miller, in suing out the warrant, acted as the agent of Shirlington Super Markets, Inc., because he moved the court to substitute the latter for Joseph Miller as defendant. The trial court denied the motion, and no objection was made or exception taken to its action.

■ It is apparent from the record that the attack upon the trial judge is unjustified. The record shows some confusion in the proceedings, which lasted five days, due in some measure to the shifting position and contentions of the plaintiff, and, perhaps, to a misconception of his rights, if any, under the pecular circumstances which existed. On the whole, it appears that the trial judge sought to give judgment according to the right of the case, and that he exercised commendable patience. In our opinion, he would have been justified in striking the plaintiff's evidence at the conclusion of all the testimony.

■ The trial justice had no authority and was without jurisdiction, under the circumstances, to issue a distress warrant in favor of Miller. The erroneous recital in the warrant was due to his mistake. When he signed the warrant, it was his act, a judicial error. Miller had the right to rely upon the presumption of

law that the trial justice would correctly issue the warrant in accordance with the allegations of his affidavit.

See *Darnell* v. *Davis,* 190 Va. 701, 707, 58 S. E. (2d) 68.

Instruction A was more favorable to the plaintiff than he was entitled to. Its language is too broad. It permitted the jury to speculate upon oppressive or aggravating circumstances, when no special damages were charged. Injury to character and reputation, and damages to credit and good name were not alleged or proven. *Fishburne* v. *Engledove,* 91 Va. 548, 22 S. E. .354; *Gurfein* v. *Howell,* 142 Va. 197, 128 S. E. 644.

There is no merit in the second assignment of error. On the motion to set aside the verdict, the trial court requested the use of a stenographic transcript which had been made up at the request and cost of Miller. The court later returned the transcript to defendant. When plaintiff, about to note his appeal, found that the transcript was not in the clerk's office, he moved the court to direct defendant to leave the transcript with the clerk. The motion was overruled and exception noted. Plaintiff then secured another transcript at his own expense from the stenographer.

No authority is cited for plaintiff's contention. We know of no rule which requires a litigant to provide a stenographic record, obtained at his expense, for the benefit of his opponent. Defendant's transcript of the proceedings never became a part of the record.

In view of the conclusion which we have reached, it is not necessary to discuss the assignments of cross-error.

The judgment of the trial court is affirmed.

*Affirmed.*