COURT OF APPEALS OF VIRGINIA

Present:   Judges Humphreys, AtLee and Raphael
Argued by videoconference


KIONNE L. PULLEY, S/K/A
  KIONNE LYDELL PULLEY

                                                          OPINION BY
v.        Record No. 1203-20-3              JUDGE RICHARD Y. ATLEE, JR.
                                                      DECEMBER 28, 2021

COMMONWEALTH OF VIRGINIA


                  FROM THE CIRCUIT COURT OF AUGUSTA COUNTY
                              Anne F. Reed, Judge[1]

          Tyler M. Jerrell, Assistant Public Defender, for appellant.

          Leanna C. Minix, Assistant Attorney General (Mark R. Herring,
          Attorney General, on brief), for appellee.


        Kionne Lydell Pulley appeals his convictions for attempted possession of a Schedule III

controlled substance by a prisoner, in violation of Code § 53.1-203, conspiracy to distribute a

Schedule III controlled substance, in violation of Code § 18.2-248, and soliciting another to

deliver a controlled substance to a prisoner, in violation of Code § 18.2-474.1.  On appeal, Pulley

argues that the Circuit Court of Augusta County ("trial court") erred by admitting certain

statements that violated the rule against hearsay and his Confrontation Clause rights.  He also

argues that the evidence was insufficient to support his convictions.  For the following reasons,

we disagree and affirm his convictions.


_____

        [1] Judge Reed presided over Pulley's sentencing and signed the final sentencing order.
Judge W. Chapman Goodwin presided over the trial.  Judge Goodwin ruled on the admissibility
of the statements and found Pulley guilty of the charges.

## I. Background

"On appeal, we review the evidence in the 'light most favorable' to the Commonwealth, the prevailing party in the trial court." Yerling v. Commonwealth, 71 Va. App. 527, 530 (2020) (quoting Vazquez v. Commonwealth, 291 Va. 232, 236 (2016)).

In November 2018, Sergeant Benjamin Lokey and Special Agent Lisa Quesenberry were investigating suspected narcotics trafficking at the Augusta Correctional Center—a state prison. Sergeant Lokey, whom the trial court qualified as an expert in drug trafficking within the prison system, testified that inmates regularly use coded language when discussing drugs over the prison phone system. Sergeant Lokey testified that Suboxone is measured by "strips" of "sublingual film" and that the strips cannot get wet or they will dissolve. Visitors typically smuggle Suboxone into the prison by wrapping the strips in plastic before inserting them into a body cavity. Each Suboxone strip can be divided into sixteen pieces for individual use, and, in prison, the market value fluctuates between $100 and $200 per strip. He also testified that the current value was $200 per strip, the highest he had ever seen it.

Sergeant Lokey and Agent Quesenberry testified that they had listened to a series of phone calls between Pulley, an inmate at the prison, and Cherie Kemper, a non-incarcerated person "connected" to Pulley, that occurred between November 16-17, 2018.[2] During a call at 12:25 p.m. on November 16, 2018, Pulley told Kemper she had to "fix them this time," and he asked if she had any "saran wrap." Kemper agreed to get some. In a second call at 2:44 p.m., Pulley gave Kemper Amanie's number, and he instructed Kemper to text her address to Amanie so that someone could deliver a "package" by 3:00 p.m.

---

[2] The investigation began when Sergeant Lokey listened to a phone call between "Offender Tayvon" and "Amanie." During that phone call, Sergeant Lokey heard a phone number. He tracked that phone number to Cherie Kemper.

In a third call at 2:54 p.m., Kemper told Pulley the package was there and that "they didn't even knock on the door. They just stuck it in the mailbox." In a fourth call at 3:10 p.m., Pulley instructed Kemper that she could not "get them wet" or "[t]hat shit won't be no good." Kemper told Pulley she would just "put them . . . in the refrigerator." Pulley asked Kemper, "what's the count?"; and Kemper responded, "80."

On November 17, 2018, Kemper arrived at the prison to visit Pulley. Prison officials searched her but did not find narcotics. Nevertheless, her visit "was terminated." Soon after, Pulley contacted Kemper and told her to "send that shit back." Kemper mentioned the cost of sending it back, and Pulley said, "I'm just telling you, man, like don't even fuck with it . . . ."

That afternoon, Sergeant Lokey and Agent Quesenberry executed a search warrant at Kemper's residence. Agent Quesenberry testified that she found the Suboxone in the refrigerator, and, subsequently, the certificate of analysis confirmed that there were seventy-six "sublingual films" and four "sublingual film fragments." Sergeant Lokey discovered eighty Suboxone wrappers in the trash can. Agent Quesenberry also recovered Kemper's cell phone and discovered the text conversation between Kemper and Amanie regarding the "arrangements . . . made between Amanie and Kemper for Amanie to send the Suboxone to Kemper."

After the search of Kemper's home, Sergeant Lokey and Agent Quesenberry interviewed Pulley, who admitted that he was the one that "arranged for the drugs" and he would "take full responsibility." He explained that Kemper had kids, and he did not want her to get in trouble.

At the beginning of trial, defense counsel advised the trial court that he would be objecting to nearly all of the Commonwealth's evidence. Counsel argued that the testimony about statements made on the recorded phone calls violated the rule against hearsay and Pulley's right to confrontation under the Confrontation Clause. Addressing the hearsay argument, the trial court conditionally admitted the statements subject to the Commonwealth connecting the

- 3 -

statements to a conspiracy. Addressing the confrontation argument, the trial court relied on United States v. Jones, 716 F.3d 851 (4th Cir. 2013), to conclude that the statements made during a recorded prison call were not testimonial in nature. Pulley continued to object throughout the trial, and the trial court ultimately overruled his objections.

After the presentation of the Commonwealth's evidence, Pulley moved to strike the evidence as insufficient on all three charges. Pulley argued that the evidence did not connect him to the Suboxone, a Schedule III controlled substance, rather than some other item or a Schedule I or II controlled substance. He also argued that the evidence was too speculative to connect him to the Suboxone and, if he did intend to possess it, there was no evidence what he intended to do with it once he received it. The trial court denied the motion, and it convicted Pulley on all three counts. Pulley now appeals to this Court.

## II. ANALYSIS

### A. *Hearsay*

Pulley argues that the trial court erred by admitting "hearsay evidence of statements and recordings in phone calls where speakers were not present to testify at trial." We disagree.

"[T]he determination of the admissibility of relevant evidence is within the sound discretion of the trial court subject to the test of abuse of that discretion." Jones v. Commonwealth, 71 Va. App. 597, 602 (2020) (alteration in original) (quoting Johnson v. Commonwealth, 70 Va. App. 45, 49 (2019)). "A reviewing court can conclude that 'an abuse of discretion has occurred' only in cases in which 'reasonable jurists could not differ' about the correct result." Atkins v. Commonwealth, 68 Va. App. 1, 7 (2017) (quoting Commonwealth v. Swann, 290 Va. 194, 197 (2015)).

Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Va. R. Evid. 2:801(c).

If evidence is hearsay, then "it 'is inadmissible unless it falls within one of the recognized exceptions' to the rule against hearsay." Jones, 71 Va. App. at 604 (quoting Melick v. Commonwealth, 69 Va. App. 122, 133 (2018)). One such exception provides that a statement made by the defendant's co-conspirator "during the course and in furtherance of the conspiracy" is not excluded by the rule against hearsay. Va. R. Evid. 2:803(0)(E); see also Rabeiro v. Commonwealth, 10 Va. App. 61, 63 (1990).

Generally, "there must be evidence establishing a prima facie case of conspiracy before the declarations of a co-conspirator . . . may be admitted into evidence." Wilkerson v. Commonwealth, 33 Va. App. 808, 820 (2000) (quoting Floyd v. Commonwealth, 219 Va. 575, 581-82 (1978)).[3] The *prima facie* case of conspiracy must be established by evidence that is independent of the challenged co-conspirator's statements. Rabeiro, 10 Va. App. at 64. But "[t]he order of presentation of evidence . . . is usually a matter left to the discretion of the trial court and, absent an abuse of discretion, will not be disturbed." Wilkerson, 33 Va. App. at 821 (second alteration in original) (quoting Cirios v. Commonwealth, 7 Va. App. 292, 300 (1988)). A trial court may "conditionally admit[]" the co-conspirator statements "subject to being

---

[3] The Commonwealth argues that the rule set out in Floyd and its progeny does not apply in this case because it refers only to co-conspirator statements "made out of the defendant's presence." Floyd, 219 Va. at 581-82; see also Wilkerson, 33 Va. App. at 820; Rabeiro, 10 Va. App. at 63. The current expression of the rule in Virginia Rule of Evidence 2:803(0)(E) does not contain that requirement. It requires only that the co-conspirator statement be made "during the course and in furtherance of the conspiracy." Va. R. Evid. 2:803(0)(E). We recognize that the Rules of Evidence "state the law of evidence in Virginia" and are not intended to "change any established case law rendered prior to the adoption of the Rules." Va. R. Evid. 2:102. The facts in earlier cases involving the co-conspirator exception to the rule against hearsay involved co-conspirator statements made outside the presence of the defendant, which carry the added concern that "a co-conspirator may be making calculated statements to divert attention by implicating others for his or another's wrongdoing." Rabeiro, 10 Va. App. at 64. Because the co-conspirator statement here was made in the presence of and directly to the defendant, that concern is not present. Nevertheless, both expressions of the rule condition admissibility of the statement on the existence of a conspiracy; consequently, case law requiring the Commonwealth prove a *prima facie* case of conspiracy is still applicable.

'connected up' by subsequent independent proof of concert of action[,] . . . [and] the case will not be reversed because proof of the conspiracy came at the wrong time." Id. (quoting Floyd, 219 Va. at 582).

Pulley argues that the Commonwealth did not prove a *prima facie* case of conspiracy. *Prima facie* evidence is "evidence which on its first appearance is sufficient to raise a presumption of fact or establish the fact in question unless rebutted." Id. at 820 (quoting Babbitt v. Miller, 192 Va. 372, 379 (1951)). "Conspiracy is defined as an agreement between two or more persons by some concerted action to commit an offense." Velez-Suarez v. Commonwealth, 64 Va. App. 269, 277 (2015) (quoting Feigley v. Commonwealth, 16 Va. App. 717, 722 (1993)). "[I]t is a rare case where any 'formal agreement among alleged conspirators' can be established." Carr v. Commonwealth, 69 Va. App. 106, 118 (2018) (quoting Johnson v. Commonwealth, 58 Va. App. 625, 636 (2011)). But where the Commonwealth can show that the defendants "by their acts pursued the same object, one performing one part and the others performing another part so as to complete it or with a view to its attainment, the [fact finder] will be justified in concluding that they were engaged in a conspiracy to that object." Id. (alteration in original) (quoting Brown v. Commonwealth, 10 Va. App. 73, 78 (1990)).

Pulley correctly notes that the trial court could not consider Kemper's or Amanie's statements in assessing whether a conspiracy existed. But the Commonwealth presented sufficient independent evidence that Pulley, Kemper, and Amanie conspired to commit the same criminal object.

The record demonstrates that Pulley and Kemper engaged in a series of calls on November 16-17, 2018. During those calls, Pulley instructed Kemper to text her address to a

phone number so that someone could deliver a package to Kemper.[4]  Sergeant Lokey testified that the number was traced to Amanie.  It is reasonable to conclude that Kemper complied with that instruction and that Amanie arranged the delivery of the package because Pulley's subsequent statements and instructions indicated that the package had, in fact, been delivered.  Specifically, Pulley instructed that the package's contents could not get "wet," and he asked what the "count" was.  Further, upon execution of a warrant, Suboxone was found at Kemper's house.  After the Suboxone was discovered at Kemper's, Pulley admitted he arranged delivery of the drugs to Kemper's house.  At minimum, this evidence shows that Pulley, Kemper, and Amanie conspired to smuggle drugs into a prison.

Additionally, as discussed in more detail below, the evidence was sufficient to conclude that Kemper and Pulley conspired to possess the drugs with the intent to distribute them within the prison.  Pulley arranged to have eighty strips of Suboxone smuggled into the prison.  Sergeant Lokey testified that each strip of Suboxone could be broken down into sixteen individual doses, for a total amount of 1,280 doses.  Further, Sergeant Lokey's testimony that the value of Suboxone was at its highest level within the prison was evidence that the drug was in high demand.  He also testified that each strip had a current prison value of $200 per strip, meaning the eighty Suboxone strips were worth $16,000.  Thus, the evidence also demonstrates a *prima facie* case of conspiracy to distribute a controlled substance.  Accordingly, the trial court did not err in finding Kemper's and Amanie's statements admissible under the co-conspirator exception to the rule against hearsay.

---

[4] Although the *prima facie* evidence of conspiracy must be independent from Kemper's or Amanie's out-of-court statements, Pulley's out-of-court statements are admissible under a separate exception and can be considered as evidence of the conspiracy.  See Va. R. Evid. 2:803(0)(A) ("The following are not excluded by the hearsay rule, even though the declarant is available as a witness: . . . [a] statement offered against a party that is (A) a party's own statement . . . .").

B. *Confrontation Clause*

Pulley argues that the trial court erred when it "admitted evidence of statements made by persons not present to testify at trial in violation of [his] rights of confrontation under the Sixth and Fourteenth amendments to the United States Constitution." We disagree.

"[W]e review *de novo* [the constitutional question of] whether a particular category of proffered evidence is testimonial hearsay." Logan v. Commonwealth, 72 Va. App. 309, 316 (2020) (*en banc*) (second alteration in original) (quoting Cody v. Commonwealth, 68 Va. App. 638, 658 (2018)). In conducting our *de novo* review, however, we are "bound by the trial court's findings of historical fact unless 'plainly wrong' or without evidence to support them." Cody, 68 Va. App. at 656 (quoting McGee v. Commonwealth, 25 Va. App. 193, 198 (1997) (*en banc*)).

The Confrontation Clause guarantees that an accused "shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. "[T]he Confrontation Clause prohibits the introduction of 'testimonial' statements by a witness who does not testify at trial, unless the witness is 'unavailable to testify, and the defendant . . . had a prior opportunity for cross-examination.'" Logan, 72 Va. App. at 316-17 (second alteration in original) (quoting Crawford v. Washington, 541 U.S. 36, 54 (2004)). "A statement qualifies as testimonial if the 'primary purpose' of the statement was to 'creat[e] an out-of-court substitute for trial testimony.'" Id. at 318 (alteration in original) (quoting Michigan v. Bryant, 562 U.S. 344, 358 (2011)). The Supreme Court of the United States has held that many "hearsay exceptions "cover[] statements that by their nature [are] not testimonial—for example, business records or *statements in furtherance of a conspiracy*." Crawford, 541 U.S. at 56 (emphasis added).

As discussed above, Kemper's and Amanie's challenged statements were made in furtherance of a criminal conspiracy. Together with Pulley, they arranged for Amanie to deliver

the Suboxone to Kemper, who would then smuggle the Suboxone into the prison. As such, the challenged statements, by their nature, are not testimonial.

Pulley suggested during oral argument that the prison recorded the phone calls with a trial in mind. But "just because recorded statements are used at trial does not mean they were 'created for trial.'" United States v. Jones, 716 F.3d 851, 856 (4th Cir. 2013) (quoting United States v. Cabrera-Beltran, 660 F.3d 742, 752 (4th Cir. 2011)). We look not to the prison's purpose for recording the call, but to Amanie's and Kemper's primary purpose in making the statements. See id. ("Even if [declarants] were aware that the prison was recording their conversation, a declarant's understanding that a statement could potentially serve as criminal evidence does not necessarily denote 'testimonial' intent."). Amanie's and Kemper's statements were not made with the purpose of creating an "out-of-court substitute for trial testimony." Logan, 72 Va. App. at 318 (quoting Bryant, 562 U.S. at 358). Because Amanie's and Kemper's statements were not testimonial, the Confrontation Clause is not implicated, and the trial court did not err in admitting them.

## C. *Sufficiency of the Evidence*

Pulley challenges the sufficiency of the evidence supporting each of his three convictions. "In reviewing a challenge to the sufficiency of the evidence, we affirm the trial court's judgment 'unless it appears from the evidence that the judgment is plainly wrong or without evidence to support it.'" Poole v. Commonwealth, 73 Va. App. 357, 363 (2021) (quoting Alvarez Saucedo v. Commonwealth, 71 Va. App. 31, 47 (2019)). "In conducting our review, we do not substitute our own judgment for that of the factfinder." Id. (quoting Bondi v. Commonwealth, 70 Va. App. 79, 87 (2019)). Instead, we ask "whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" Mollenhauer

v. Commonwealth, 73 Va. App. 318, 333 (2021) (quoting Davis v. Commonwealth, 65 Va. App. 485, 500 (2015)).  We address each conviction in turn.

### 1. Attempted Possession of a Schedule III Controlled Substance

Pulley argues that the evidence was insufficient to convict him of attempted possession of a Schedule III controlled substance by a prisoner.  Specifically, he argues that the evidence was insufficient to demonstrate he intended to possess Suboxone, a Schedule III controlled substance, rather than a Schedule I or II controlled substance or some other innocent item.  We disagree.

Code § 53.1-203(6) provides, "It shall be unlawful for a prisoner . . . [to] have in his possession a controlled substance classified in Schedule III of the Drug Control Act . . . ."  "An attempt to commit a crime is composed of two elements:  (1) [t]he intent to commit it; and (2) a direct, ineffectual act done towards its commission."  Fletcher v. Commonwealth, 72 Va. App. 493, 506 (2020) (quoting Haywood v. Commonwealth, 20 Va. App. 562, 565 (1995)).  "The intent required to be proven in an attempted crime is the specific intent in the person's mind to commit the particular crime for which the attempt is charged."  Id. (quoting Wynn v. Commonwealth, 5 Va. App. 283, 292 (1987)).  In this case, the Commonwealth must prove that Pulley intended to possess a Schedule III controlled substance.  "Intent may, and most often must, be proven by circumstantial evidence and the reasonable inferences to be drawn from proven facts are within the province of the trier of fact."  Sarka v. Commonwealth, 73 Va. App. 56, 67 (2021) (quoting Fleming v. Commonwealth, 13 Va. App. 349, 353 (1991)).

Here, the evidence was sufficient to demonstrate that Pulley intended to possess Suboxone.  Pulley instructed Kemper to get saran wrap, and he warned her not to get the contents wet or "[t]hat shit won't be no good."  As Sergeant Lokey explained, these statements are indicative of Suboxone, which dissolves when wet.  Pulley asked "the count," and Kemper responded, "80."  Further, Kemper told Pulley she would keep it in the refrigerator, which is

exactly where Sergeant Lokey and Agent Quesenberry found eighty Suboxone films and film fragments. Finally, after the Suboxone was discovered, Pulley admitted that he "arranged for the drugs" and he "took full responsibility." These facts demonstrate that Pulley understood he was discussing Suboxone and not some other controlled substance or innocent item. Accordingly, the evidence was sufficient to support Pulley's conviction for attempted possession of a Schedule III controlled substance by a prisoner.

## 2. Solicitation to Deliver Narcotics to a Prisoner

Pulley next argues that the evidence was insufficient to convict him of soliciting another to deliver a controlled substance to a prisoner. Rule 5A:18 provides, "No ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable this Court to attain the ends of justice." "Under settled principles, the 'same argument must have been raised, with specificity, at trial before it can be considered on appeal.'" Johnson v. Commonwealth, 58 Va. App. 625, 637 (2011) (quoting Correll v. Commonwealth, 42 Va. App. 311, 324 (2004)). "Making one specific argument on an issue does not preserve a separate legal point on the same issue for review." Id. (quoting Edwards v. Commonwealth, 41 Va. App. 752, 760 (2003) (*en banc*)).

On appeal, Pulley argues that his only command to Kemper was to provide her address and to obtain saran wrap, neither of which is a felony. Alternatively, he argues that the evidence equally supports a finding that Kemper initiated the scheme to smuggle the Suboxone into the prison. In the court below, however, Pulley argued only that the evidence was insufficient to connect his comments with the Suboxone. These arguments are not the same, and we find that Pulley did not sufficiently preserve this issue for our review.

Pulley asks that we apply the ends of justice exception to consider the issue. "'The ends of justice exception is narrow and is to be used sparingly,' and [it] applies only in the extraordinary situation where a miscarriage of justice has occurred." Holt v. Commonwealth, 66 Va. App. 199, 209 (2016) (*en banc*) (quoting Redman v. Commonwealth, 25 Va. App. 215, 220-21 (1997)). "[W]hen an appellant raises a sufficiency of the evidence argument for the first time on appeal, the standard is higher than whether the evidence was insufficient." Id. at 210 (alteration in original) (quoting Brittle v. Commonwealth, 54 Va. App. 505, 514 (2009)). Thus, "in examining a case for miscarriage of justice, we do not simply review the sufficiency of the evidence under the usual standard, but instead determine whether the record contains affirmative evidence of innocence or lack of a criminal offense." Id. (quoting Flanagan v. Commonwealth, 58 Va. App. 681, 695 (2011)).

With that heightened standard in mind, the record here does not affirmatively prove that Pulley did not induce Kemper to commit a felony. The record fails to support Pulley's general assertion that the evidence is lacking. In addition to Pulley's recorded instructions to Kemper, the record also contains Sergeant Lokey's testimony about the meaning of the coded language and Pulley's own statements "tak[ing] full responsibility." Accordingly, because the record does not contain affirmative evidence of Pulley's innocence, the standard is not met, and the ends of justice exception does not apply.

### 3. Conspiracy to Possess with Intent to Distribute a Schedule III Substance

Finally, Pulley argues that the evidence was insufficient to prove that he conspired to possess the Suboxone with the intent to distribute it.[5] Specifically, he argues that the evidence

---

[5] To support a conviction for conspiracy to possess with the intent to distribute, the evidence must establish that the defendant "and at least one other person conspired to possess the [controlled substance] with such an intent." Edwards v. Commonwealth, 18 Va. App. 45, 48

did not indicate "whether he intended to take possession of that [S]uboxone, or whether he intended to give, sell, or otherwise distribute it."

Because of the difficulty of proving intent directly, the Commonwealth may (and often must) prove intent to distribute by circumstantial evidence. Cole v. Commonwealth, 294 Va. 342, 361 (2017). Circumstantial evidence probative of intent to distribute may include: quantity of drugs seized, packaging, presence of unusual amount of cash, and drug paraphernalia or equipment related to distribution. Id. "Quantity, when considered in context with other circumstances," may "have significant probative value." Adkins v. Commonwealth, 217 Va. 437, 440 (1976). In fact, the quantity of drugs alone "may be sufficient to establish such intent [to distribute] if it is greater than the supply ordinarily possessed for one's personal use . . . ." Cole, 294 Va. at 361-62 (first alteration in original) (quoting Dukes v. Commonwealth, 227 Va. 119, 122 (1984)). "The quantum of evidence necessary to prove an intent to distribute depends on the facts and circumstances of each case." Scott v. Commonwealth, 55 Va. App. 166, 173 (2009) (*en banc*) (quoting Askew v. Commonwealth, 40 Va. App. 104, 110 (2003)).

Here, the evidence established that Pulley arranged to bring in at least eighty Suboxone strips into the prison. Sergeant Lokey explained that each Suboxone strip could be divided into sixteen pieces for individual use, and he testified that one Suboxone strip was worth between $100 and $200 in the prison system. He also testified that it was currently at its highest value of

---

(1994). On brief to this Court, Pulley also argues that the evidence was insufficient to prove that Kemper intended to distribute or that she was aware of his intent to distribute. In his argument to the trial court, however, he argued only that the evidence was insufficient to prove that *he* intended to distribute the controlled substance. Because Rule 5A:18 bars our consideration of issues not raised in the trial court, we do not consider whether the evidence demonstrates that Kemper had the requisite intent. See Johnson, 58 Va. App. at 637 ("Under settled principles, the 'same argument must have been raised, with specificity, at trial before it can be considered on appeal.'" (quoting Correll, 42 Va. App. at 324)). Thus, we consider only whether the evidence is sufficient to prove Pulley intended to distribute.

- 13 -

$200. Though Sergeant Lokey did not testify what amount was consistent with personal use, a reasonable fact finder could conclude that possession of 1,280 individual doses was not consistent with personal use. Given the importance of the specific facts and circumstances in our analysis, we are mindful that this occurred within the context of a state prison. A reasonable fact finder could conclude that it would be unlikely that a prisoner, with no evidence of income in the record, would have the necessary funds to purchase $16,000 worth of Suboxone for his personal use or that he would be able to indefinitely conceal 1,280 doses of Suboxone when his person and living quarters are subject to inspection. See Williams v. Commonwealth, 278 Va. 190, 194 (2009) ("The aggregate value of the drugs in [the defendant's] possession was such that an unemployed person would be unlikely to be able to afford them if he were merely a user.").

Furthermore, the evidence in the record indicates that Pulley was part of a drug supply network. Sergeant Lokey and Agent Quesenberry listened to a call between Offender Tayvon and Amanie, which led them to Pulley. Using coded language, Pulley then instructed Kemper on how to arrange for shipment of the drugs from Amanie. When the Suboxone had been seized, Pulley admitted he "arranged" everything and took responsibility.

"[C]ircumstantial evidence is not viewed in isolation." Holloway v. Commonwealth, 57 Va. App. 658, 665 (2011) (en banc) (quoting Commonwealth v. Hudson, 265 Va. 505, 514 (2003)). "While no single piece of evidence may be sufficient, the 'combined force of many concurrent and related circumstances, each insufficient in itself, may lead a reasonable mind irresistibly to a conclusion.'" Id. at 665-66 (quoting Derr v. Commonwealth, 242 Va. 413, 425 (1991)). Here, the facts and circumstances are sufficient to lead a reasonable mind to the conclusion that Pulley intended to distribute the Suboxone within the prison.

III. Conclusion

For the foregoing reasons, we find that the trial court did not err in admitting the statements of witnesses that did not testify at trial. Nor did it err in finding the evidence sufficient to convict Pulley of the charges against him. Accordingly, we affirm the decision of the trial court.

<u>Affirmed.</u>